## LAMKIN v. CRAWFORD.

1. A purchaser at sheriff's sale, who refuses to comply with the contract of purchase, is liable to an action by the sheriff, and the right to recover the full price cannot be controverted, if the sheriff, at the time of the trial, has the ability to deliver the thing purchased, or if that has been placed at the disposal of the purchaser, by a tender. The loss actually sustained by the seller, is, in general, the true measure of damages when the purchaser refuses to go on with the sale.

2. When the sheriff has re-sold the thing which the first purchaser has refused to pay for, there is an implied contract by the first purchaser to pay the difference, which is thus ascertained between his bid and the subsequent sale; and a count upon a contract to pay the same is good.

Lamkin v. Crawford.

3. Where a sale is made by private indviduals, the same rule does not apply, and in such a sale, to let in a recovery of the difference between the sales, it must appear that the one last made, was under such circumstances as will indicate that a fair price has been obtained.

4. There is, however, an exception to the rule, that the sheriff may recover the difference between the sales, and that is, when the first purchaser is himself the owner of the property sold, as the defendant in execution, or from having purchased it from the defendant in execution, after its lien has attached. In such a condition of things, the surplus, after satisfying the execution, belongs to the party purchasing.

5. It is no defence to an action by the sheriff, against a purchaser refusing to go on with the sheriff's sale, that the thing purchased was not the property of the defendant in execution. That is a matter to be ascertained by the purchaser previous to bidding, and cannot be urged against an action for the price. *Quere*—If relief could not be afforded by the Court upon a proper application.

Writ of Error to the Circuit Court of Lowndes.

Assumpsit by Crawford, for the use of William T. Streety, against Lamkin. The declaration has three counts, which were severally demurred to. The first count sets forth, that Crawford, as the Marshal of the United States for the Southern District of Alabama, had levied an execution, issued from the Circuit Court of the United States for that district, in favor of one Hall against Harden, Marcus, and Levi Pruitt, on a certain slave, and on the 7th January, 1839, exposed the same to sale, at public outcry, upon the terms, that the highest bidder should be the purchaser, and should pay cash upon the delivery of the slave; that Lamkin became the purchaser on these terms, at the price of $1,000. And avers an offer of the slave to the defendant, who refused to receive and pay for him according to his promise and undertaking.

The second sets out the execution as for $828, damages, with interest from the 16th of April, 1838, besides $46 costs; avers its levy on a slave, as the property of Levi Pruitt; that the sale was advertised to take place on the 7th day of January, 1839, and that it was then offered for sale at public outcry, upon the following terms, with others, to wit: the sale to be to the highest bidder, to be paid in cash, on the delivery of the said slave. It then avers, that the defendant became the highest bidder, at the sum

of $1,000; that the plaintiff tendered the slave to the defendant, and demanded that sum, which he did not, nor would pay; whereupon the plaintiff again exposed the slave to the highest bidder, and it sold for $750. It then alledges a liability in the defendant, to pay the difference between his bid and what the sale of the slave produced on the resale, and a consequent promise to pay that sum. The third count is similar to the second, but states the right of re-selling at the risk of the first bidder, as one of the terms of the first sale.

The demurrers to the several counts were overruled, and the defendant then pleaded—1. Non-assumpsit. 2. That the slave sold was not the property of the defendant in execution. The plaintiff demurred to the last plea, and his demurrer was sustained.

At the trial upon the general issue, it was shown in evidence, that Crawford, Marshal of the United States for the Southern District of Alabama, by one Love, his deputy, having a *fi. fa.* in his hands in favor of Hall v. Pruett and others, levied on a slave, as the property of one of the defendants in execution, and after having advertised the slave, exposed him to sale, when, the defendant being the highest bidder, became the purchaser at one thousand dollars.

Previous to the levy and sale, the deputy marshal had demanded of the plaintiff's agent a bond of indemnity, against any damage in making the levy and sale; this fact was proclaimed by the deputy marshal before the sale. After the sale, the defendant offered to pay the purchase money if the deputy marshal would either assign to him the indemnifying bond, or make him a warranty title to the slave. The deputy marshal refused to do either, but offered to execute the ordinary marshal's deed, and deliver the slave, and the defendant then refused to pay the purchase money. The deputy marshal then put up the slave and sold him on the spot, when the brother-in-law of one Streety, who was the real plaintiff, and had the control of the execution, purchased him at $750. Streety, the real plaintiff, was present, and gave a receipt to his brother in law for the bid, and paid the marshal his costs.

On this state of proof, the Court charged the jury, that the measure of the damages was the difference in money between the first and second sale.

The defendant offered to prove the real value of the slave, which, upon an objection by the plaintiff, the Court refused to allow.

The defendant excepted to these several matters, and they are now assigned as error, as is also the overruling of his demurrers to the several counts of the declaration, and the sustaining the plaintiff's demurrer to the second plea.

THOMAS WILLIAMS, for the plaintiff in error, made the following points:

1. The first count of the declaration is bad, because no injury can arise out of the facts therein alledged, to the plaintiff, as marshal. If the slave remains unsold, it is the property of the defendant in execution, and he may not complain of any injury.

2. The second and third counts are bad, because they assume the liability of the defendant to pay the difference between the sale, and the resale. If the last had produced sufficient to discharge the plaintiff's execution debt, the marshal is not injured at all, and if there is a surplus upon the recovery of the $250 from the defendant, this, instead of belonging either to to the marshal, or the plaintiff in execution, would properly belong to the Pruitts. Independent of this, the difference between the sales is not the only measure of damages, and therefore cannot be declared for *eo nomine*. [Adams v. McMullen, 7 Porter, 74.] So, also, the defendant, under certain circumstances, might be entitled to the surplus, after satisfying the execution, as he would be if he had purchased the slave from Pruitt, after the lien of the execution had attached, but before the sale. [Wheeler v. Kennedy, 1 Ala. Rep. N. S. 292.]

3. If the defendant in execution had no title to the slave, or if it did not belong to him, the defendant ought not to be forced to complete a purchase made in ignorance of the fact.

4. The questions upon the instructions are substantially the same as those arising out of the pleadings, but the proof might have shown that the slave was worth less than the price bid at first, and the plaintiff ought not to recover more than would satisfy the plaintiff in execution.

ELMORE, contra, insisted, that all the questions raised have

Lamkin v. Crawford.

been settled by previous decisions. [Aikin v. School Comm'rs, 5 Porter, 169; Robinson v. Garth, 6 Ala. Rep, 204.]

GOLDTHWAITE, J.—1. The general question as to the right of a sheriff to maintain an action against a purchaser refusing to comply with the contract of sale, arising out of his bid, at sheriff's sale, was settled in Robinson v. Garth, 6 Ala. Rep. 204; but in that case there was no objection taken to the mode of declaring. The objection to the first count of this declaration, as insisted here, is, that if the slave remains unsold, in the marshal's hands, no injury has been sustained by any one, as it cannot be known but more money will be produced by a resale. This may be answered by a reference to the peculiar liabilities which the law imposes on this officer, if, omitting to re-sell, and confiding in the expectation that the purchaser will pay, he returns, that by the sale of the slave, he has made the money which was bid. By this, he would become personally responsible to the extent of the sale returned, and his right to recover the full price, we think, cannot be controverted, if the ability to deliver the slave continues at the time of the trial; or if it has been placed at the disposal of the bidder, by a proper tender. The seller of goods which are not in themselves perishable, has the right, either to re-sell, and look to the former purchaser for damages, upon his contract, or he may make a tender and keep it good, and recover the whole original price. Such was the decision in Bement v. Smith, 15 Wend. 493. It is obvious however, that no recovery to that extent could be had, when the seller had, subsequently to the tender, appropriated the goods to his own use, or again sold them. In general, the true rule by which to ascertain the damages resulting to the seller, from the refusal of the purchaser to go on with the sale, will be the loss actually sustained. [Gerard v. Taggart, 5 S. & R. 19; Mussen v. Price, 4 East, 147.] We think these reasons are conclusive to show, that there is no valid objection to the mode pursued in the first count.

2. The second and third counts assume, that the defendant is liable for the precise difference between the sum bid at the first sale, and that produced at the last; and the only difference between them is, that in the one the legal liability is supposed to grow out of the fact of purchasing at such a sale, and in the other, that it was one of the conditions of the sale. In the School Com-

missioners v. Aikin, 5 Porter, 169, the declaration was the same as the second count here, and would have been sustained, but for the fact, that the plaintiff had no authority to dispose of the school lands under a minimum price; and consequently no implication could arise of a right to re-sell, unless that price could be obtained. We put the decision upon the demurrer there, expressly on these grounds, and say, if upon the second sale, the lands had brought the minimum price, the declaration would have been good. That, it will be seen, was an official sale, and we think the same consequences grow out of every sale of this kind, and that there is always an implied contract to pay the difference, which is ascertained between the bid, and the subsequent sale. This is peculiarly the case with sheriffs' sales, because the officer is bound to make the money at his peril, and the only means which the law gives him, is by a re-sale.

3. In the case of sales which are not made by official persons, this rule has no application, because the sale is not a forced one, and to let in the recovery of the difference of price, it must appear that the subsequent sale was made under such circumstances, as will indicate that a fair price has been obtained. This is the effect of our decision in Adams v. McMillan, 7 Porter, 74. We there say, where the right to re-sell lands, for a failure to comply with the contract is one of the conditions, the difference between the two sales is the measure of damages agreed on by the parties, and is in the nature of stipulated damages; but if no such condition is entered into, as one of the terms of sale, the vendor, upon a breach of the contract, would certainly be entitled to recover such damages as he had sustained by its violation; and the difference between the first and second sale would be a good criterion of the damages sustained by the vendor; not, however, as binding on the jury, but as fit testimony to be received by them, as a means of coming to a correct conclusion. As a general rule, therefore, we think it is implied as a condition in all sheriffs' sales, that the officer may re-sell, if the contract of sale is not complied with by the purchaser, and that the difference is generally recoverable, as in the nature of liquidated damages.

4. We say generally recoverable, because there is one condition of the property, which may exist, in which the purchaser would clearly only be liable to the extent of the money to be collected by the sheriff, and perhaps also such damages as he might

be amenable for, from a failure to return the money. This condition is, where the purchaser is in reality the owner of the property sold, as the defendant in execution, or from having purchased it from the defendant in execution, after the lien of the judgment or execution had attached. In such a condition of things, the surplus arising from the sale, would clearly belong to the purchaser. [Wheeler v. Kennedy, 1 Ala. Rep. N. S. 292.] But this is considered by us, merely an exception to the general rule, which does not require a change in the form of pleading.

5. The demurrer to the second plea, we think, was properly sustained, as the plea presents no ground of defence to the action. The rule certainly is, that the sheriff is not understood as guaranteeing the property of the defendant in the thing sold. That is a matter to be ascertained by the purchaser previous to bidding, and cannot be urged against an action for the price. Whether, upon a proper application, the Court from which the execution issued, might not have the power to relieve a purchaser, under peculiar circumstances, is not the question here, and calls for no expression of opinion.

Having now examined all the points raised in argument, we have only to announce the conclusion, that the judgment must be affirmed.