## KING ET AL. vs. COLLINS, ADM'R.

1. A notice of an intended *annual* or *partial* settlement will not authorize the rendition of a *final* decree.

2. When an infant is interested in the settlement of an estate before the Court of Probate, it is the duty of the court to appoint a guardian *ad litem* for her, although she may have a guardian of her person and property regularly appointed, who was notified of the settlement, and failed to attend. (Overruling Parks v. Stonum, 8 Ala. 755.)

3. The rules of practice which obtain in the Court of Chancery should be applied to the practice of the Court of Probate when they can be made to apply, in those cases where no rule of practice can be drawn from the statutes of this State or from the Ecclesiastical Courts of England.

4. Whether an executor or administrator in chief who has settled with the administrator *de bonis non*, may apply to the Court of Probate for a discharge from liability to the estate, *quaere?* But conceding that he may, he should give notice of his intended application, produce his receipt showing the settlement, and move for a discharge; the court cannot, *ex mero motu*, order his discharge, upon the mere representation of the administrator *de bonis non*, upon his final settlement, that he has settled in full with the executor or administrator in chief.

ERROR to the Court of Probate of St. Clair.

John Collins, administrator *de bonis non* with the will annexed of Joel Chandler, deceased, appeared before the Court of Probate of St. Clair county, on the second Monday in August, 1850, and filed his accounts and vouchers for a settlement of said estate, so far as the same had been adminis-

tered by him; whereupon the accounts and vouchers were examined, audited, and reported for allowance at a special term of said court, to be held on the fourth Monday in September then next following; and it was ordered, "that the said fourth Monday in September be set for the settlement of said estate, so far as the same had been administered, and that the account of the administrator as stated be then allowed, as upon partial settlement, unless proper objections thereto be then made; and that notice thereof be posted up for forty days before said fourth Monday in September, at the court house door and three other public places in said county, that all persons interested may then and there appear, and contest the same, if they think proper."

On the day appointed, the administrator appeared, and reported to the court, that he had 'made a full and final settlement of the estate with the several distributees, and had taken their receipts for the same, except that of William C. Mynott, guardian of Elizabeth A. King, a minor; and he produced the several receipts. He also reported, that he had made a final settlement with James Hampton, one of the executors of the testator's will, and presented to the court the accounts as made out and settled between him and Hampton. He further reported, that all the legacies given by the will had been paid, except one given to Ignatius Chandler, of a horse, saddle and bridle, to be paid when he should attain the age of twenty-one years. He further reported, that he had in his hands, as would appear from his accounts, the sum of $1245,07, which belonged to Elizabeth A. King. Thereupon the court proceeded to make a settlement, and rendered a decree as follows:

"This day having been set apart by a previous order of this court, made at a regular term thereof holden on the second Monday in August, 1850, for a final settlement of the accounts of John Collins, administrator *de bonis non*, with the will annexed of Joel Chandler, deceased; and notice of said settlement having been given by publication at the court house door and three other public places in the county (all the parties in interest being resident citizens of this State) for more than forty days previous to said settlement; came John Collins, and presented his accounts for allowance. Thereupon

came James Hampton, &c.," naming all of the distributees, except Elizabeth A. King; "and it appearing to the satisfaction of the court, that William C. Mynott is guardian for Elizabeth A. King, a minor, and that he had due and lawful notice of this settlement; and no objection or exception having been made by any of the parties, to the said accounts of the administrator: It is ordered by the court, that said accounts and vouchers be allowed, and that the same be entered of record, as a full and final settlement of the administration of said Collins on the estate of said Joel Chandler, up to September 23, 1850."

The decree then recites, that it appeared from the account filed by the administrator, and from the several receipts presented by him, that all of the legatees and distributees, except Elizabeth A. King, had been fully paid, and that the said administrator had in his hands the sum of $1245,07 belonging to the said Elizabeth, which sum he was ordered to pay over to her guardian.

It was further ordered, "that said James Hampton, former executor of said estate, be fully discharged from all liability to the estate on account of his said executorship;" and that John Collins be continued in the administration of said estate, and that he retain, out of any moneys that might thereafter come to his hands, the sum of one hundred dollars subject to the order of the court, for the purpose of paying the legacy due to Ignatius Chandler.

Upon this decree Elizabeth A. King, by her guardian, sues out a writ of error, in the name of all the distributees and legatees, and assigns the following errors, among others:

1. The court erred, in proceeding to a final settlement upon proof that notice of a partial settlement had been given; the application having been made for a partial settlement only;

2. In not appointing a guardian *ad litem* for Elizabeth A. King, it appearing that she was a minor;

3. In rendering a decree in favor of William C. Mynott, as guardian of said Elizabeth;

4. In ordering that James Hampton, the former executor, be discharged from all liability to the estate; no notice having been given of any such proceeding, and the same not

being necessary to the settlement then pending before the court.

WHITE & PARSONS, for plaintiffs in error:

1. It was erroneous to render a final decree upon publication for a partial settlement. The effect of a partial settlement is, to render the accounts and vouchers thus presented *prima facie* evidence only for the administrator, upon a final settlement, and then they may be surcharged or falsified. The serious consequences which might result from being entrapped into a final settlement, when notice is given of a partial one only, are obvious to every legal mind.

2. The court should have appointed a guardian *ad litem* for Elizabeth A. King, who is shown to be a minor. The record is silent, as to what evidence was before the court to show that W. C. Mynott was her guardian; and this being a court of limited jurisdiction, nothing can be presumed in favor of the record. Commissioners of Talladega v. Thompson, 18 Ala. The record must always show, when there are minors, *that they were represented before the court*, either by a guardian or a guardian *ad litem*. Devor's Heirs v. Devor's Admrs., decided at June term, 1851; Black's Heirs v. Black's Admrs., January term, 1852. If it were admitted that Mynott was the regular guardian, yet, as he failed to attend and represent the infant, the court should have appointed a guardian *ad litem*.

3. The decree should have been in the name of Elizabeth A. King, by her guardian, and not in the name of the guardian.

4. The decree does not show the amount of the distributive shares which the others received; whether the sum in the hands of the administrator ordered to be paid to the guardian of said Elizabeth, is equal to the shares which the others received, is left to conjecture. A final decree should ascertain the amount to be divided, the number of persons who are to share it, and in what portions.

5. The court erred in ordering the discharge of James Hampton from all liability to the estate. The law does not authorize it in this proceeding, and no notice was given of it.

RICE & MORGAN, for defendant in error:

The errors are assigned for Elizabeth A. King alone, and the writ of error is prosecuted by Mynott, as guardian. Elizabeth A. King cannot complain that the judgment is erroneous, upon this writ of error.

1. The decree was not in legal effect final, although the decree denominates it final up to 23d September, 1850. The subsequent part of the decree re-commits the estate to Collins, the administrator.

2. If the decree is not final, no writ of error will lie from it. 8 Porter 554.

3. The court could not appoint a guardian *ad litem* for the infant, when it appeared that she had a regular guardian. Bacon's Abridgement, vol. 4, p. 546.

4. The notice and proceedings in this case were regular, and the decree cannot be questioned for the want of the appointment of a guardian *ad litem*. Parks v. Stonum, 8 Ala. Rep. 754.

5. The record shows that all the parties to this settlement reside in this State, and that the infant, E. A. King, had a regular guardian, who had notice of the settlement, and that no one appeared to contest the settlement. When an inferior court has jurisdiction, all intendments are made in favor of the proper exercise of that jurisdiction, which are made in courts of general jurisdiction, and the recitals of the court that certain facts were proved, import absolute verity. 15 Ala. 497; 4 ib. 158; 11 ib. 245; 6 ib. 611; 18 ib. 482.

6. It certainly is not shown, in this case, that the court erred to the prejudice of the plaintiff in error.

7. The right of an administrator *de bonis non* to call a former administrator or executor to settlement, is expressly conferred by statute; but there is no requirement upon him to do this in the Probate Court alone. It would be strange if an administrator *de bonis non* could not settle with his predecessor, when he is required by law to do so. He may protect himself by a settlement in court; but if he does not choose to do so, he becomes liable to the distributees for the consequences of an improper settlement, and his bond stands as security for that act, as well as any other act of his administration. The court may act upon the settlement so made,

if no objection is made; and if objection is made, the administrator *de bonis non* must explain the settlement so made, and show its propriety. The court can as well act upon a settlement presented in the report of the administrator *de bonis non*, as if made by the first administrator. Suppose in this case the executor had been cited to settlement, and he had produced the receipt in full of the administrator *de bonis non*, against all his liabilities to the estate, that would be a discharge to him. 12 Ala. 105; 6 Ala. 399.

DARGAN, C. J.—The first question presented to us by the assignment of errors is this: Was the notice given to the distributees sufficient to authorize the decree that was rendered? The notice itself is not before us, and we can only form an idea of its character from the order directing it to be given. This order is in the following language: "It is ordered by the court, that the said fourth Monday in September be set for the settlement of said estate, so far as the same has been administered, and that the account as stated be then allowed as upon a partial settlement." In the absence of the notice itself, we can only presume that it corresponded with the order directing it to be made, and, therefore, that it was a notice of a partial settlement, and not a final one. But the decree that was rendered is final in its character, and is conclusive as to the rights of the parties as they are ascertained by it. Hence the question is narrowed down to this: Will notice of a partial settlement justify the court in proceeding to a final settlement? Anterior to the act of the 11th of Feb., 1850, it was doubtful whether there was any difference in legal effect between annual settlements and final settlements; at least the act of 1843 left the question in a confused condition. But the act of 1850 declared the effect of annual or partial settlements, making them only *prima facie* evidence of their correctness, and subjecting them to be impeached for any error in law or fact, upon the final settlement. See Pamphlet Acts 32, 33. The consequence of this act is, that final and partial settlements differ widely in their legal effect; the former being conclusive, and the latter only *prima facie* evidence of their correctness. A notice, therefore, of an intended annual or partial settlement, will not authorize the rendition of

a final decree; and the court erred in proceeding to render a final decree in the absence of some of the distributees, the notice to them being only of a partial settlement.

We are also of the opinion, that the court should have appointed a guardian *ad litem* for the infant, notwithstanding she may have had a guardian of her person and property regularly appointed, but who failed to attend the settlement. We have on several occasions held, that it was error to proceed to a final settlement, where there were infant distributees, without appointing guardians *ad litem* to protect their interest. See Clack's Distributees v. Clack's Administrators, decided at the last term, and cases there cited. But the precise question here presented we do not remember to have decided.

We know it is the duty of all courts, to see that the interest of an infant, who is a party to a suit before it, is properly protected, and this can only be done, by appointing some one to supervise and protect his rights, when there is no one else that can or will do it. As this is the duty of the court, we do not see how this duty can be said to be performed or dispensed with, merely by showing that the infant had a guardian, but who failed to attend and supervise his rights. We apprehend, that if the cause was pending in a court of chancery, the Chancellor would not fail to appoint a guardian *ad litem*, because he was advised that the infant had a guardian regularly appointed; and even if he did, his decree would be liable to be reversed for this reason. And we know of no other rules of practice to apply to the Court of Probate, that will better secure the rights of infants, than those which obtain in the Court of Chancery; and we therefore think, that the court should have appointed a guardian *ad litem* for the infant defendant, inasmuch as her regular guardian failed to attend the settlement.

We are, however, referred to the case of Parks v. Stonum, 8 Ala. 755, in which it was decided, that it was not an error to render a final decree, even when there were infant defendants, provided they did not appear before the final decree was rendered, for the purpose of contesting the account; but this decision is opposed to several subsequent ones, and in this particular cannot be sustained. The statute, it is true, re-

quires that the Orphans' or Probate Court should appoint guardians *ad litem* for minors, if necessary ; but we consider it necessary to be done in all cases, if the regular guardian fails to attend for the purpose of supervising the interest of the defendants.

We have intimated, that the rules of practice which obtain in the Court of Chancery should be applied to the practice of the Probate Court, in cases where they can be made to apply; but that must be understood to be confined to those cases where no rule of practice to be drawn from our statutes, or from the Ecclesiastical Courts of England, can be made to apply, which is the case in this instance.

We also think, that the court acted improperly, in ordering Hampton, the executor, to be discharged from liability to the estate. We know that an administrator *de bonis non* is authorized under our law to call on the executor or administrator in chief, who has resigned or been removed from office, to account to him for all assets that have come to the hands of such executor or administrator ; and the consequence of this right is, that the administrator *de bonis non* may settle with him out of court, and give a full receipt or discharge from all liability, which could not be impeached unless for fraud or mistake. But we do not think that this right of the administrator *de bonis non* authorized the Probate Court to make the order in this particular instance. The validity of the receipt was a matter outside of the settlement; at least its validity was not propounded by James Hampton; nor does it appear that he moved for a discharge. But we infer from the record, that the court ordered his discharge merely because the administrator in his report showed that he had made a settlement with him. This was erroneous. It may be, that an executor or administrator in chief, who has settled with the administrator *de bonis non*, may apply to the Orphans' Court for a discharge from liability to the estate. That question, however, we do not decide; but conceding that he may, he should give notice of his intended application, produce his receipt showing the settlement, and move for a discharge.

But the mere fact, that the administrator *de bonis non*, upon a final settlement, represents that he has settled in full with the executor or administrator in chief, will not authorize the

court, *ex mero motu*, to discharge such executor or administrator from liability.

These are the only assignments of error we deem it necessary to examine; if there be any others that would work a reversal of the decree, they can be corrected in the court below upon another trial.

Let the decree be reversed, and the cause remanded.