## JOHNSON *vs.* LIGHTSEY.

[ACTION BY CARRIER FOR FREIGHT—RECOUPMENT OF DAMAGES.]

1. *Relevancy of evidence on question of negligence.*—Where the question at issue is, whether or not a carrier by water was guilty of negligence in the transportation of freight, the fact that he communicated by telegraph with a point above on the river, after his boat had stranded, for the purpose of ascertaining the stage of water at that point, may be relevant evidence for him; consequently, if such evidence is admitted by the primary court, its ruling will be affirmed on error, unless the bill of exceptions negatives the existence of any circumstances which would render the evidence admissible.

2. *Same.*—In such action, a delay by the carrier having been shown, from which injury might have resulted, he may show that, before the commencement of the voyage, the plaintiff consented that such delay should occur; the maxim applies, *volenti non fit injuria.*

·12

3. *Same.*—It having been shown that the carrier, at the time of the accident which caused the injury complained of, was descending the river with two flat-boats lashed together, he may show that flat-boats were frequently carried down the river in that manner; and that it was a customary mode of navigating the river.

4. *Competency of agent as witness for principal.*—In an action by a carrier to recover freight, the defense being set up that the cargo was damaged by his negligence, and that the defendant is entitled to recoup for such damages, the pilot who had charge of the flat-boat at the time of the accident, is a competent witness for the plaintiff, unless it is affirmatively shown that the same act of negligence on his part, which caused the damage to the defendant's goods, also made the pilot liable to an action at the suit of the plaintiff.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. ROBERT DOUGHERTY..

THIS action was brought by Josiah Lightsey, against William Johnson, to recover the freight agreed to be paid by the defendant for the transportation of several hundred bales of cotton from Selma to Mobile, at the rate of one dollar and a quarter per bale. The defense set up was, that the cotton was injured in the transportation by the plaintiff's negligence, and that the defendant was entitled to recoup the damages thereby occasioned. The bill of exceptions in the case is very imperfect, being neither signed nor sealed by the presiding judge, and appearing to be unfinished in other particulars ; but, by agreement of counsel, these defects were waived. The principal facts, so far as they are deemed material to a correct understanding of the legal principles decided, are the following :

In May, 1855, the plaintiff agreed with the defendant and others to carry about twelve hundred bales of cotton, of which about four hundred bales belonged to the defendant, from Selma to Mobile, in flat-boats, at the rate of one dollar and a quarter per bale. The cotton was put on three flat-boats at Selma in June, and reached the consignees in Mobile some time in July, having been damaged on the river to the extent of five or six dollars per bale. The bills of lading, which were offered in evidence by the defendant, contained the customary clause excepting dangers of the river. . The plaintiff offered one

Norris as a witness, who was the pilot employed by him to take the flat-boats down the river, and by whom they were taken down. The defendant objected to the competency of this witness when offered, and moved the court, after the evidence was closed, to exclude his testimony from the jury; reserving exceptions to the overruling of each motion.

The witness Norris testified, "that he had been a pilot on the Alabama river, on steamboats, for four years before 1855, but had never been a pilot on a flat-boat; that he was employed by plaintiff to take said flat-boats to Mobile, and did take them to Mobile; that he started from Selma with two of the boats, and, in passing a place called 'White's Shoal,' with the two boats lashed together, one of them stranded, and had to be left behind; that it remained there some five or six days, and was then taken off by a person employed for that purpose by the defendant; that the channel of the river, at 'White's Shoal,' was narrow and dangerous, and the stream rapid; that one boat at a time could have entered or passed with safety, and both boats could have been taken through together if he had known the channel; and that he went on down the river, to a place called 'Upper Peach Tree', and telegraphed back to Selma, to know whether the river was rising. To this last statement of the witness, as to his having telegraphed to Selma, the defendant objected, as irrelevant; the court overruled the objection, and the defendant excepted."

"Said witness further testified, that when he left Selma, it was the understanding that he was to take two of the boats, and go to 'Upper Peach Tree,' leave them there, and return to Selma for the other; that this was the understanding between plaintiff and defendant's agent, at the instance of said agent. To this evidence the defendant objected, as illegal and irrelevant; but the court overruled the objection, and he excepted. Plaintiff asked said witness, 'if it was usual on the Alabama river for flat-boats to go down two lashed together'; and the witness answered, 'that he had sometimes seen one boat, and sometimes two and three boats lashed together, going

down the river'. The defendant objected to this question and answer, each, because the evidence was illegal and irrelevant; and excepted to the overruling of his objections. There was other evidence, tending to show that, at that time, it was customary on the Alabama river for flat-boats, laden with cotton, to descend the river, two lashed together; to which proof, also, the defendant excepted."

The rulings of the court on the evidence, as above stated, are assigned as error.

ALEX. WHITE, for appellant.

J. R. JOHN, and JNO. T. MORGAN, contra.

A. J. WALKER, C. J.—We cannot affirm that the court erred in the admission of evidence, unless the vice of its ruling is apparent from the bill of exceptions. The entire evidence in this case does not seem to be set forth in the bill of exceptions. It is conceivable that, in a case where the negligence of a carrier by water is the point of controversy, the fact of his communicating with a point above on the river, as to the stage of the water, might be material and relevant. For example, if a boat were aground, it might be a matter of proper caution for the carrier to ascertain, by telegraphic communication, whether there was a prospect of an early rise in the river; the existence, or want of such a prospect, might materially influence the judgment of a prudent man in such a contingency; and it might be that the failure to resort to the telegraph for information, as to the approach of a rise, would justify an argument against the carrier as to the exercise of proper diligence. The bill of exceptions does not negative the existence of circumstances, in which the testimony would have been relevant; and presuming in favor of the correctness of the ruling in the circuit court, we regard it as justified by the facts of the case, as they were presented to that court.

[2.] The defendant could not complain that there was a delay at 'Upper Peach Tree,' while the pilot returned for other boats, if such delay was pursuant to his agreement,

made through his agent. He could recover no damages for injury resulting from a delay to which he assented. Colbert v. Daniel, 32 Ala. 14. It was, therefore, permissible for the plaintiff to prove, that there was an "understanding," before the commencement of the voyage, with defendant's agent, that such delay should occur; because it afforded an excuse for that from which negligence might otherwise have been argued.

[3.] The fact that two boats, lashed together, had frequently been taken down the river, had a material and direct bearing upon the question, whether there was negligence in the plaintiff's adopting the same plan. The tendency of the proof was to demonstrate that the plaintiff, in lashing two boats together, did not adopt a new and untried plan of navigation, but one which had been successfully practiced before. There was, therefore, no error committed in permitting the plaintiff to prove by his witness, "that he had seen sometimes one boat, at other times two and three boats, lashed together, going down the river;" and that it was customary on the Alabama river for flat-boats, laden with cotton, to descend two lashed togeter.

[4.] The remaining question to be considered in this case, is, whether the pilot on the boats, freighted with the defendant's cotton, was competent to testify as a witness for the plaintiff. As the defendant prosecutes his claim against the plaintiff by plea of set-off, the question is to be considered as if the defendant were prosecuting a suit against the plaintiff, and the latter were offering the witness for his protection against a recovery. The argument for the appellant is, that the agent, for whose wrongful act, injuring the property of a third person, the principal is sued, must be an incompetent witness for the principal, where the same act which renders the principal liable, also makes the agent liable to the principal. In such a case, the agent would certainly be incompetent to testify for his principal, at the common law.—Bank of Oswego v. Babcock, 5 Hill, 152; Middlekauff v. Smith, 1 Md. R. 329–341; McClure v. Whitesides, 2 Carter's Ind. 573; Green v. New River Company, 4 Term R. 589; Gardner

& Devereaux v. Smallwood, 2 Hay. 349; 4 Stark. on Ev. 768.

If the question of the incompetency of the witness remains as it was at common law, we cannot affirm, upon the record before us, that the court erred in permitting the witness to testify. The incompetency of the witness, in such case, depends altogether upon the fact of the agent's liability to the principal. The conduct of the agent must, therefore, have been wrongful in reference to the principal, as well as to the injured person. It may have been such as to have rendered the principal liable, without involving any breach of duty on the part of the agent or pilot to the principal. An example would be presented, if an agent should act wrongfully with the consent of his employer.—Barnes v. Cole & Fitzhugh, 21 Wend. 188; Noble v. Paddock, 19 Wend. 456; Juniata Bank v. Beale, 1 W. & S. (Pa.) 227; Stewart v. Kip, 5 J. R. 256; Smith v. Seward, 3 Barr, 342; Hawkins v. Finlayson, 3 C. & P. 305; Whitmore v. Waterhouse, 4 ib. 383.

The competency of persons, not parties to the record, is presumed until the contrary appears, and the *onus* is upon the objector to show the incompetency. It is not enough that a mere probability of incompetency should be raised; the facts upon which it depends must be fairly established, as must the affirmative of every issue of fact in judicial proceedings.—Rives v. Plank-Road Company, 30 Ala. 92. It devolved upon the defendant to establish, that the very act or acts of negligence, which constituted the *gravamen* of his action, gave rise to a cause of action by the plaintiff against the pilot. This does not appear from the bill of exceptions to have been done. The causes of the plaintiff's damage are not traced to a misfeasance or malfeasance of the pilot in reference to the master. If there was improper delay, or if there was imprudence in lashing two boats together, it would be quite as reasonable to attribute those wrongs to the master, (who may have been upon the boats, for aught that is disclosed by the record,) as to the pilot. If it be said that the testimony shows that the stranding

of the boat was attributable to the pilot, a satisfactory reply is, that it does not appear that the stranding was the cause of the injury complained of.

The judgment of the court below is affirmed.