## HUTTON vs. WILLIAMS.

[ACTION BY JOINT TENANTS, AGAINST PURCHASER AT COMMISSIONERS' SALE, FOR DIFFERENCE OF PRICE AT FIRST AND SECOND SALE.]

1. *Who may sue for breach of contract by purchaser at commissioners' sale.*—When real estate is sold by commissioners, under an order of the probate court, (Session Acts 1855–6, p. 20,) and,on the purchaser's failure to comply with the terms of the sale, is again resold under an order of court, the persons to whom it belonged may maintain an action against the purchaser, to recover the excess of his bid over the price brought at the resale, notwithstanding the commissioners who made the sale might also maintain an action against him.

2. *When wife may sue alone.*—When one of several joint tenants, whose lands have been sold under an order of the probate court for partition, is a married woman, her interest in the proceeds of sale, or in the excess of the purchaser's bid over the price brought at a resale, belongs to the *corpus*, and not to the income or profits of her separate estate ; consequently, (Code, § 2131,) an action to recover such excess should be brought in her name alone, without joining her husband.

3. *When guardian may sue for ward.*—Where an infant is one of several joint tenants, whose lands are sold under an order of the probate court for partition, his guardian may sue in his own name, for the use of the infant, (Code, § 2036,) jointly with the other joint tenants, to recover from the purchaser the excess of his bid over and above the amount brought at a resale.

4. *Damages against purchaser at commissioner's sale, on failure to comply with conditions.*—When lands are sold, for partition among the owners, by commissioners appointed by the probate court, it is an implied condition of the

sale, that if the purchaser fails to complete the sale, the lands may be resold on his account; consequently, on his failure to complete the sale, he becomes liable for the difference between the amount of his bid and the price brought at a subsequent resale, as for stipulated damages.

5. *Tender of bond or certificate of purchase to purchaser.*—When lands are sold for partition, under an order of the probate court, (Session Acts 1855–6, p. 20,) the law does not impose on the commissioners the duty of giving or tendering to the purchaser a bond or certificate of purchase.

6. *What is sufficient memorandum to avoid statute of frauds.*—When lands are sold by commissioners, under an order of the probate court, a written memorandum by one of the commissioners, who is not averred to have been thereunto lawfully authorized in writing by the purchaser, (Code, §§ 1551–52,) is not sufficient to take the case out of the statute of frauds.

7. *Sale for partition under order of probate court.*—A sale of land for partition among the owners, by commissioners appointed under an order of the probate court, is a judicial sale, and requires the confirmation of the court by which the order was granted.

8. *What contracts for sale of land are within statute of frauds.*—A sale of land for partition, by commissioners appointed under an order of the orphans' court, is within the statute of frauds, (Code, § 1550,) unless it has been confirmed by the court.

9. *Competency of witness as affected by interest.*—One of the commissioners by whom land is sold, under an order of the probate court, for partition among the owners, is a competent witness (Code, § 2302) for the owners of the land, in an action brought by them against the purchaser at the sale, to recover the excess of his bid above the amount brought at a resale after his failure to comply with the terms of the sale.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. PORTER KING.

THE complaint in this case was in the following words: "David H. Williams, who, as guardian for, and as such sues for the use of, William B. Hutton, Aquila D. Hutton, Aurelius W. Hutton, and Emmet C. Hutton, minors, under the age of twenty-one years, and Eugenia F. Williams, who sues in her own right, claim of the defendant, John N. Hutton, two hundred and fifty dollars as damages, under the following circumstances: Aquila D. Hutton died in Greene county, Alabama, in the year 1852, leaving a will, by which he devised all his real estate to the said William B., Aquila D., Aurelius W., Emmet C., and Eugenia F., who are his children; which will was duly admitted to probate, in said county, shortly after said testator's death. The real estate thereby bequeathed was as follows," (describing the land.) "On the — day

of June, 1856, the said Eugenia F., by the said David H.
Williams, her husband and next friend, filed her petition
in the probate court of said county, alleging that said
lands could not be equitably partitioned among the said
legatees without a sale, and praying the court to order a
sale for the purpose of division.  Such proceedings were
had upon said petition, in conformity to law, that on the
14th August, 1856, the said probate court passed a decree
in conformity with the prayer of said petition, directing
said lands to be publicly sold, before the courthouse-door
in the town of Eutaw, on a credit of one and two years,
for notes with at least two good sureties; the first pay-
ment to be one-half, and to fall due twelve months after
the day of sale ; and the last payment to fall due twenty-
four months after said sale, but to bear interest after
twelve months from the date thereof; and appointing F.
P. Snedicor, James D. Duncan, David R. Chiles, John J.
Carpenter and Macklin N. Cockrell, commissioners to
make and conduct said sale, and to take the notes of the
purchasers payable to said David H. Williams and Eugenia
F., his wife, William B. Hutton, Emmet C. Hutton, Au-
relius W. Hutton, and Aquila D. Hutton ; and directing
them to make a return, in writing, of the manner in which
they should execute the trust.  The said commissioners
advertised the sale of said lands, with the terms of sale,
pursuant to the order of said court, and, on the 6th day
of October, 1856, in pursuance of said order and adver-
tisement, put up all of said lands at public sale, before
the courthouse-door in the town of Eutaw, and, in the
presence of the bystanders, publicly proclaimed the terms
of sale ; and said lands were all cried off to purchasers.
At the sale thus made, the said John N. Hutton, well
knowing the terms of sale, bid off the undivided moiety
of the lands above described (there being two hundred
and twelve acres) at $4 12½ per acre ; the whole amount-
ing to $874 50, for which he was to give notes in pursu-
ance of said order and advertisement ; and said undivided
moiety of said lands was cried off, and knocked down to
him, at that price.  But, after said sale was concluded,
the said John N. Hutton refused to comply with the terms

33

of said sale, or to give his notes as directed by said order of sale, or in any way to perfect his bid, although urged and requested so to do by said commissioners. On the 6th October, 1856, the said commissioners made their return in writing to said probate court, in conformity with the order appointing them, and, among other things, re ported to said court that said John N. Hutton had bid off the undivided moiety of said lands at said sale, (there being two hundred and twelve acres,) at $4 12½ per acre, the whole amounting to $874 50, for which he should have given his notes; but that he refused to give his notes therefor, as directed by said order, and as required by the conditions of said sale. The said court then ratified the sale, so far as the said John N. Hutton was concerned in bidding off said undivided moiety; but, as he refused to give his notes therefor, the said court then ordered said undivided moiety of said lands to be resold, at the risk of said John N. Hutton, on the terms prescribed in the first order, by F. P. Snedicor, James D. Duncan, John J. Carpenter, Macklin N. Cockrell and John Strait, who were then and there appointed by said court commission- ers for that purpose; of which said orders of court the said John N. Hutton then and there had notice. In pur- suance of this last order of said court, the said last named commissioners re-advertised and resold said undivided moiety of said lands; and at this last sale the said John N. Hutton again became the highest bidder therefor, and the same was knocked down to him at the price of $3 50 per acre; the whole amounting to $742, for which amount said Hutton executed notes in conformity with the terms of sale. The said commissioners made due return to said court of this last sale, and their report was by said court confirmed. The difference between said Hutton's bid at said first sale, and his bid at the said second sale, is $132 50; and in consequence of his refusal to comply with the terms of the first sale, expenses were incurred to the amount of $100 in making the second. The plaintiffs therefore claim from him these two amounts, or damages equivalent thereto, for his failure to comply with his bid

and the terms of sale at said first sale, with the costs of suit."

The defendant demurred to this complaint, and assigned the following grounds of demurrer: "1st, that the plaintiffs in said complaint have no right of action against this defendant; 2d, that the said Eugenia F. Williams, being a *feme covert*, has no right to sue in her own name; 3d, that the said minor heirs have no right to sue or maintain said suit; 4th, that there is a misjoinder and non-joinder of parties plaintiff in said suit; 5th, that said complaint contains statements of numerous facts and circumstances which are irrelevant, immaterial and improper, and which this defendant is not bound to answer; 6th, that said complaint nowhere alleges any term or condition of said first sale, to the effect that, if the purchaser failed to comply with the terms of said sale, the said land would be resold at his risk; and, 7th, that said complaint does not state that said commissioners, or any one for them, offered to make or deliver to the defendant any bond or certificate of purchase." The court overruled the demurrer, and the defendant then pleaded, "in short by consent, 1st, the general issue, with leave to give in evidence any special matter of defense; and, 2d, the statute of frauds, averring that there was no such authority or memorandum in writing as thereby required." The plaintiffs demurred to the second plea, on these grounds: "1st, because said plea is not a sufficient bar or answer to the facts alleged in the complaint; 2d, because the sale alleged in the complaint is not within the statute of frauds; and, 3d, because the complaint shows that a sufficient memorandum of the sale was made by the said commissioners, to-wit, their report of the said sale." This demurrer having been overruled by the court, the plaintiffs then filed the following replications to the second plea: 1. "That said commissioners, on the 6th October, 1856, immediately after the said sale was made, reported to the said probate court, in writing, that they had made said sale pursuant to said order; in which report they stated the contract of sale, terms, name of purchaser, on whose account sold, and the price bid for said lands by the de-

fendant, in conformity with section 1552 of the Code."
2. " That the said commissioners sold said lands as alleged
in said complaint, and, in so doing, employed one Thomas
L. Ratcliffe, who was not a licensed auctioneer, to cry the
sale of said lands; and that the land which, as the said
complaint alleges, was bid off by this defendant, was
knocked down to him as the highest bidder by said Rat-
cliffe; and that F. P. Snedicor, one of the said commis-
sioners, immediately thereupon made a note thereof, or
memorandum in writing, in conformity with section 1552
of the Code."

To each of these replications the defendant demurred,
and assigned the following grounds of demurrer : to the
1st, " because it is not a sufficient answer to the said second
plea, and because it nowhere alleges any such note or
memorandum in writing of said sale as is required by
sections 1551 and 1552 of the Code of Alabama;" and to
the 2d, " because it is not a sufficient answer to the said
second plea; because the note or memorandum alleged
in said replication is not shown to have been made by the
auctioneer, his clerk, or agent; and because it is not
averred that F. P. Snedicor, the maker of said memoran-
dum, was ever lawfully authorized by this defendant, in
writing, to make any such note or memorandum for him
as is required by section 1551 of the Code." The court
sustained the demurrer to the first replication, and over-
ruled the demurrer to the second; and thereupon the
defendant rejoined to the 2d replication, " that said F. P.
Snedicor was not authorized by him, in writing, to make
any such note or memorandum as is alleged in said 2d
replication." The court sustained a demurrer to this
rejoinder, and the defendant then joined issue on the 2d
replication.

On the trial, as the bill of exceptions shows, the plain-
tiffs offered F. P. Snedicor as a witness, " to prove the
facts alleged in their second replication to the second plea."
The defendant objected to the competency of the witness,
on the ground of interest, " because he was a party to said
sale as one of the commissioners." The court overruled
the objection, and the defendant excepted.

The adverse rulings of the court on the pleadings, and all the other matters to which exceptions were reserved by the defendant on the trial, are now assigned as error.

Wm. P. Webb, for appellant.—1. The suit should have been brought in the names of the commissioners who sold the lands, and not in the names of the present plaintiffs.—Robinson v. Garth, 6 Ala. 204. The complaint must show a right of action in the plaintiffs.—Gould's Pleading, 173; 5 Porter, 169.

2. Mrs. Williams was improperly made a plaintiff. Her husband should either have been joined with her, or he should have sued alone. He was entitled at least to the usufruct, and to the whole recovery for life if he survived his wife.—Code, §§ 1990, 2131; Pickens v. Oliver, 29 Ala. 528; George v. English, 30 Ala. 582; 5 Johns. 65.

3. The complaint was demurrable, because it did not aver that there was any condition announced, "to the effect that, if the purchaser failed to comply with the terms of the sale, the land would be resold at his risk."—School Commissioners v. Aiken, 5 Porter, 169; Adams v. McMillan, 7 Porter, 74; West v. Cunningham, 9 Porter, 104. This is the rule in private sales, however it may be in judicial or official sales, as recognized in 6 Ala. 204, and 8 Ala. 158. The sale in this case was, at most, only quasi-official; consequently, the allegation was necessary.

4. The court erred in overruling the defendant's demurrer to the 2d replication, and in sustaining the demurrer to the rejoinder to said replication. The memorandum made by Snedicor, he not being authorized by the defendant in writing, was not sufficient to take the case out of the statute of frauds.—Code, §§ 1551–52. Snedicor was a party to the contract of sale, and any memorandum made by him was not binding or sufficient. 2 Parsons on Contracts, 292; Chitty on Contracts, (9th Amer. ed.) 308; 6 Ala. 204; 2 Sneed, 172; 13 Metcalf, 385; 3 Duer, 395; Browne on Statute of Frauds, § 367. Sales by sheriffs, trustees and administrators, are within the statute.—Browne on Statute of Frauds, 271, § 265. Masters' sales are also within the statute.—2 Parsons,

292; 2 Johns. 248; 8 Johns. 531; Sugden on Vendors, 74, 154.

5. Snedicor was not a competent witness for the plaintiffs, to prove the memorandum and contract of sale, because he was a party to the sale.—Authorities *supra.* Moreover, the record would be evidence for him, in an action against the plaintiffs, to recover for his fees or services rendered.—Code, § 2302.

T. REAVIS, and F. P. SNEDICOR, *contra.*—1. The action is brought in the names of the proper parties. Although the commissioners, by whom the sale was made, might have maintained an action for the breach of contract by the purchaser; yet the owners of the land sold, who are the persons really interested in the recovery, have an equal right to sue.—Robinson v. Garth, 6 Ala. 204. Mrs. Williams' interest in the recovery would constitute a part of the *corpus* of her separate estate; consequently, she had a right to sue in her own name, without joining her husband.—Code, § 2131; Pickens v. Oliver, 29 Ala. 528. The statute expressly authorizes a guardian to sue in his own name, for the use of his ward.—Code, § 2036; also, Cook v. Adams, 27 Ala. 294; 30 Ala. 613.

2. In judicial or official sales, there is an implied condition, that if the purchaser fails to comply with the terms of sale, the officer may resell at his risk; and the difference of price at the two sales is liquidated damages. Lamkin v. Crawford, 8 Ala. 153. That the sale here in controversy was a judical sale, see Owen v. Slatter, 26 Ala. 550; McCartney v. King, 25 Ala. 690, and cases there cited. It was not necessary, therefore, to allege that this condition, which the law impliedly annexes to the sale, was made an express condition by announcement of the commissioners. Besides, the complaint does not claim the difference between the two sales as the fixed measure of damages; but claims that amount, "or damages equivalent thereto."

3. There is no law requiring the commissioners to give the purchaser a certificate of purchase, or a bond for title. Their report to the court is the evidence of his right to a

title, after he shall have paid the purchase-money.—Code, §§ 1767, 1770. If such certificate of purchase could be demanded by him in any case, a compliance on his part with the terms of sale must precede it.

4. Judicial sales are not within the statute of frauds. 1 Sugden on Vendors, 127; Browne on Statute of Frauds, § 265; Dart on Vendors, 91, 555, notes 1 and 2; 1 Vesey, sr. 220; Smith v. Arnold, 5 Mason, 420. The reason why such sales are not within the statute, is that there is no danger of fraud or perjury, because the ratification of the sale by the court is necessary to perfect it. If, however, the decree of confirmation only takes such sales out of the statute, the allegations of the complaint would bring this case within the rule; it being expressly averred, "that the court ratified the sale so far as the said Hutton was concerned in bidding off said undivided moiety." After such decree of confirmation, the court might have attached the purchaser for a contempt in refusing to complete the purchase, or the purchaser might have applied to the court, at any time before the resale was actually made, for leave to comply with his bid, and to set aside the order to resell. But it is submitted, that sections 1551–52 of the Code do not apply to such a sale as this: if it does, such a sale could hardly ever be effected so as to bind the purchaser.

5. If the statute of frauds is applicable to the case, then it is insisted, that the commissioners who made the sale, and not the crier employed by them, were the auctioneers; and that the memorandum made by Snedicor was sufficient to bind the purchaser. In making the sale, the commissioners acted as the agents of the court; the order appointing them constituted them, *pro hac vice,* auctioneers; and the defendant, in dealing with them, was, in effect, dealing with the court.—Wolfe v. Sharp, 10 Rich. (S. C.) 60; 2 McCord's Ch. 151; Jennings v. Jenkins, 9 Ala. 289.

6. If the case is within the statute, the commissioners' report of the sale, which contains every fact necessary to avoid the statute, was a sufficient memorandum within section 1552.—Browne on Statute of Frauds, § 347; 3 Gill & John. 359; 5 Yerger, 63.

7. Snedicor had no interest in the subject-matter of the suit, nor in the result of it. He was, therefore, a competent witness.

A. J. WALKER, C. J.—It is contended, that this suit was not brought in the names of the proper parties plaintiff. The objections are, that the exclusive right of action was in the commissioners, who sold the land; that if the married woman who is a plaintiff, was a proper party, her husband should have been joined with her; and that a guardian, in such a case, has no right of action in his own name, for the use of his wards.

[1.] The legal title to the lands sold was in the plaintiffs. The proceeds of the sale would have belonged to them. By the purchaser's failure to comply with his contract, the plaintiffs were injured, and any damages recovered for such failure must necessarily be their property. The plaintiffs are, therefore, literally within the principle, that an action to recover damages "must, in general, be brought in the name of the person whose legal right has been affected."—1 Chitty on Pleading, 60. If the commissioners who made the sale have, by way of exception to the general rule, power to sue, it does not militate against the right of the present plaintiffs to bring suit. There would simply be a right of action, either in the commissioners, or in the plaintiffs. The point is so ruled in Robinson v. Garth, (6 Ala. 204,) and we entertain no doubt of the correctness of the decision on that point. There was a right of action in the owners of the land offered for sale, notwithstanding the sale may have been made through the agency of commissioners appointed by the probate court.

[2.] The *feme covert* who was one of the owners of the land, was the sole party having a right of suit, so far as her interest was concerned. Her share in the recovery which may be had, will belong to the *corpus*, and not to the income or profits of her separate estate. The decisions in Pickens and Wife v. Oliver, (29 Ala. 528,) and McConeghy v. McCaw, (31 Ala. 447,) place such a construction upon section 2131 of the Code, as makes the

wife, without her husband, the proper plaintiff in such a case, notwithstanding there may be incidental damages, which will go to the husband.

[3.] The suing by the guardian, in his own name, for the use of his wards, is at least authorized by section 2036 of the Code, which says, " guardians may sue in their own names, for the use of the ward, in all cases where the ward has an interest, and the judgment inures to his benefit."

[4.] The next ground of demurrer, pressed upon our attention by the counsel for the appellant, is, that the complaint claims as damages the excess of the defendant's bid above the price at the second sale. The decisions of this court establish the principle, that when the right to resell, at the risk of one who may fail to comply with his contract of purchase, is either an express or implied condition of the sale, the difference between the greater price bid at the first sale, and the less price at which the second sale was made, is in the nature of damages stipulated by the parties.—Lamkin v. Crawford, 8 Ala. 153 ; Adams v. McMillan, 7 Porter, 73; School Commissioners v. Aiken, 5 Porter, 169. The right to resell, at the risk of the purchaser failing to comply with his contract, is held in Lamkin v. Crawford, (supra,) to be an implied condition of the sale, where it is made by official persons ; and, while that decision is made directly in reference to a marshal's sale, the sale by school commissioners, mentioned in the case above cited from 5th Porter, is referred to as one to which the decision would apply. The land in this case was sold by commissioners, appointed under the act approved Feb. 5, 1856.—Pamphlet Acts, 1855–6, page 20. Commissioners, appointed by authority of that act, are, pro hac vice, officers of the court, and act under its mandate in the accomplishment of a judicial sale. Such a sale bears a close analogy to sales made under a decree of the chancery court, through the register, and it falls precisely within the principle above stated, which is announced in Lamkin v. Crawford, supra. We decide, therefore, that the complaint is not faulty, on account of

its claiming the difference between the first and second sales, as stipulated damages.

[5.] The seventh ground of demurrer—that the complaint does not show a tender to the defendant of a bond or certificate of purchase—was not well taken. The law under which the commissioners acted, does not make it their duty to give such bond or certificate.

Finding none of the grounds of demurrer to the complaint well taken, we decide that there was no error in overruling it.

[6.] The court below overruled the demurrer to the plaintiffs' second replication to the plea of the statute of frauds. The substance of the second replication, which was thus sustained, is, that the commissioners employed one who was not a licensed auctioneer to cry the sale, and that as soon as the land was bid off by the defendant, one of the commissioners made a note or memorandum thereof in writing, in conformity with section 1552 of the Code. The sufficiency of this replication, and the correctness of the ruling of the court upon the demurrer to it, depend upon the question, whether a memorandum of one of the commissioners takes the contract out of the statute of frauds.

Section 1551 of the Code specifies five classes of agreements, every one of which, it declares, is void, unless the "agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing." The fifth of those classes is described as follows: "Every contract for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase-money, or a portion thereof, be paid, and the purchaser be put in possession of the land of the seller." Section 1552 prescribes, that if the sale is at public auction, and "the auctioneer, his clerk, or agent, makes a memorandum of the property, and the price at which it is sold or leased, the terms of the sale, the name of the purchaser or lessee, and the name of the person on whose account the sale or lease is

made, such memorandum is a note of the contract, within the meaning of the preceding section." The replication does not aver, that the commissioner who made the memorandum was thereunto lawfully authorized, in writing, by the purchaser; and the memorandum is, therefore, not conformable to the requisition of section 1551 of the Code.

In Ledbetter v. Walker, (31 Ala. 175,) it was decided, that a verbal authority was sufficient to authorize an agent to sell land; but the sale in that case was made before the Code went into operation. There are authorities which hold, that one standing in the attitude of the commissioners appointed to make the sale now before us is the agent of the purchaser; and that a memorandum, made by such agent, would be a compliance with the statute of frauds. Wolfe v. Sharp, 10 Rich. 60. But the concession, that the commissioner who made the memorandum in this case was the agent of the purchaser, is not enough. Under our statute, he must not only be the purchaser's agent, but he must be thereto authorized in writing.

If the plaintiffs' replication can be maintained at all, it must be upon the ground, that the commissioner was the auctioneer, and, as such, was authorized by section 1552 to make the memorandum. Whether or not he was the auctioneer, depends upon the question, whether the auctioneer is he who cries the sale, or the seller who employs him to cry the sale. The case of Wolfe v. Sharp, (10 Rich. Law, 60,) cited by the appellees, merely asserts, that the commissioner in equity was the agent of both parties. Neither that case, nor the case of Gordon v. Sims, (2 McCord's Ch. 151,) to which it refers, asserts that the commissioner in equity is an auctioneer, when he employs the agency of another to conduct the sale. Endicott v. Penny, 14 S. & M. 144; Brown on the Statute of Frauds, § 369. The auctioneer is the agent both of the seller and of the purchaser. This being the case, it would seem impossible that one appointed by the court to sell property can be the auctioneer, when he employs the agency of another to auction off the property for him. If a person so appointed could, under such circumstances,

be considered the auctioneer, then every owner of property, who employed another to sell it to the highest bidder, would be the auctioneer. We do not think the word can be so understood, without a departure from its true meaning and common acceptation.

A professional auctioneer, pursuing the business of selling at auction for others, notwithstanding he might employ another to cry the sale for him, would doubtless be an auctioneer, within the meaning of section 1552 of the Code. But he stands in quite a different relation to the purchaser, from that in which the commissioners in this case stood. The auctioneer by occupation, who employs another to cry the sale, is an auctioneer still; and the purchaser may be regarded, by bidding at a sale made by him in his capacity of auctioneer, through the instrumentality of a crier, as constituting him an agent, under the section above stated, to bind him by a memorandum of the sale. The same thing cannot be said of a commissioner appointed to sell, who employs an auctioneer.—Emerson v. Heelis, 2 Taunt. 38.

We decide, therefore, that the commissioner who made the memorandum, was not an auctioneer, within the meaning of section 1552 of the Code; and the defendant's demurrer should have been sustained to the plaintiffs' second replication, if the plea of the statute of frauds is available in the case.

The replication does not allege, that the commissioner who made the memorandum, was the clerk or agent of the auctioneer; and therefore the question, whether the memorandum would have been sufficient, if made by the agent or clerk of the auctioneer, does not arise in the case.

[7–8.] The counsel for the appellees contends, that the statute of frauds is not applicable to judicial sales, which are to be reported to the court that orders the sale, and are then to be confirmed or set aside. This precise point seems never before to have been brought under the consideration of this court. Sales by sheriffs, school commissioners, and an executor under a power conferred by will, none of which are reported for confirmation, have

all been decided in this State to be within the statute of frauds.—Carmack v. Masterson, 3 St. & P. 411; Adams v. McMillan, 7 Porter, 73; Robinson v. Garth, 6 Ala. 204; Bell v. Owen, 8 Ala. 212.   But those were not judicial sales.   In the case of Smith v. Arnold, (5 Mason, 420,) Judge Story describes a judicial sale as one made by order of the court, and subject to its confirmation.   An example of a judicial sale given is a sale by the chancery court, through its register or master.   A distinction is drawn in that case, between a judicial sale, and a sale by an administrator in Rhode Island, where the court simply orders the sale, and in doing so exhausts its power over the subject, except to hold the administrator accountable for the proceeds of the sale.   Sales of land under an order of the probate court, by an executor or administrator, are, under our law, within this description of judicial sales. Such sales are required to be reported to the court, which then confirms or sets them aside; and not until the confirmation can the purchaser acquire a complete title. Code, §§ 1765–1770. In reference to sales made under the statute which existed before the adoption of the Code, and which was not materially different from the provisions of the Code on the same subject, it was decided, that the sale was, in legal effect, made by the court itself. Perkins v. Winter, 7 Ala. 855, 871; Wallace v. Hall, 19 Ala. 367.

The act under which the sale was made, (Pamphlet Acts 1855–56, p. 20,) does not in terms require, that the sale made under its authority should be reported to the probate court for confirmation.  It requires, however, that the sale should " be conducted in all respects as is done when property in the hands of an executor or administrator is to be distributed."   Now, real estate is, perhaps, in strict correctness of language, never "in the hands of an executor or administrator to be distributed;" but it requires no very great latitude of construction to infer, that the legislature, in framing this law, regarded land to be sold by an executor or administrator for division as property to be distributed, and designed that the sale of land under the act of 1856 should be conducted in

all respects as sales of land ordered to be sold by an execu-
tor or administrator for division.    We think that the act
of 1856 must be regarded as directing the sale of land or
personal property, in the same manner as the same species
of property is by the Code required to be sold by an
executor or administrator for division or distribution.
This conclusion is fortified by the consideration, that the
commissioners who make the sale do not act under the
obligation of an oath, nor do they give security for the
faithful discharge of their duties; and it is not probable
that the legislature intended, that commissioners so acting
should make a final sale, without the approval of the
court which appointed them.    Besides this, a farther
argument in favor of our conclusion may be drawn from
the analogy of the proceeding under the act of 1856 to
kindred proceedings in chancery, where all sales are re-
ported to the chancellor for confirmation.  In determining
the mode of proceeding in the probate court, when it ex-
ercises a jurisdiction which originally pertained to the
chancery court, it is proper to look to the established
practice of the latter.—King v. Collins, 21 Ala. 363.

From the conclusion that the law required a report of
the sale in this case to the probate court for its confirm-
ation, it necessarily follows, that the sale was a judicial
sale, under the definition given by Judge Story.  It re-
mains to be decided, whether, being a judicial sale, it is
without the operation of the statute of frauds.

Lord Hardwicke's decision, in the Attorney-General v.
Day, (1 Vesey, sr. 218,) seems to be the first reported ad-
judication upon the subject, and is the foundation of all
the subsequent cases.    That decision seems to have been
made in reference to a contract to purchase land, made
by the master, under an order of the court, for the pur-
pose of investing a charity fund.    The agreement to pur-
chase was reported, and the report was confirmed; and
the question was as to the execution of the agreement.
The lord chancellor said: " But the present is a judicial
sale of the estate, which takes it entirely out of the
statute.    The order of the court was not interlocutory,
but made part of the decree, as it always is on the matter

reserved, though made at another day; and it includes as
well the carrying the purchase into execution, as the
establishment of the charity; *amounting to a decree for the
conveyance of the estate on one side, and payment of the money
on the other,* who might be prosecuted for a contempt in
not obeying that order. And it is stronger than the com-
mon case of purchasers before the master, who are cer-
tainly out of the statute; nor should I doubt the carrying
into execution, against the representative, a purchase by
a bidder before the master, without subscribing, *after con-
firmation of the master's report that he was the best purchaser ;
the judgment of the court taking it out of the statute.*"—See
Blagden v. Bradbear, 12 Vesey, 466.

The doctrine here asserted is, that the purchase is, after
confirmation, without the statute, and that the decree of
confirmation takes it out.    Browne, in his work on the
Statute of Frauds, (§ 265,) takes the same view of the ex-
tent of the decision, saying, " The decision of Lord Hard-
wicke was simply that, *after confirmation of the report,* the
parties were bound to carry out the sale, notwithstanding
no memorandum of it had previously been made in writ-
ing."    Sugden, in his work on Vendors, gives the same
operation to Lord Hardwicke's decision, (see marginal
pages 135 and 136,) and expressly places the doctrine upon
the ground, that the judgment of the court in confirming
the purchase takes it out of the statute.    The same view
is also taken in Dart on Vendors, 555, note 2.

Judge Story, in Smith v. Arnold, (5 Mason, 420,) evi-
dently referred the exemption of such sales from the
operation of the statute of frauds to the decree of con-
firmation, for he remarked : " He (the purchaser) becomes
a party in interest, and may represent and defend his own
interest; and if he acquiesces in the report, he is deemed
to adopt it, and *is bound by the decree of the court confirming
the sale.*"

Chancellor Kent, in Simonds v. Catlin, (2 Caines' R.
61,) when deciding in reference to a sheriff's sale, made a
criticism of some severity upon Lord Hardwicke's decision
and seemed to have regarded it in a different light; but
it is manifest that that learned jurist did not observe—

what is patent upon a close examination—that the opinion which he criticised had reference to sales which required subsequent confirmation, and attributed their exemption from the statute to the operation of the decree of confirmation.—Browne on the Statute of Frauds, § 265.

In South Carolina, the court, in reference to the decision in the Attorney-General v. Day, made this remark: "It has been decided, that a sale by the master is a judicial sale, and that the confirmation of the report takes it out of the statute."—Gordon v. Sims, 2 McCord's Ch. R. 164.

The Virginia court of appeals, in Brent v. Green, (6 Leigh, 24,) distinguished, as did Judge Story in the case reported in 5 Mason, between judicial sales, and sales which did not require confirmation. In this case, the decree of confirmation is treated as the agency which relieves judicial sales from the statute, and a determination is shown to narrow the operation of the rule, and to confine it to sales technically judicial.

This collation of the authorities leads us to the decision, that judicial sales are not taken out of the statute of frauds, until the decree of confirmation, and then only by virtue of that decree. There was no decree of confirmation of the sale to the defendant, and it is, therefore, not exempt from the operation of the statute.

There is no ground upon which we can approve the action of the court in overruling the demurrer to the plaintiff's second replication, and we decide that the court erred in its judgment upon that demurrer.

[9.] The witness Snedicor was a competent witness, under our decisions made since the adoption of the Code. Harris v. Plant, 31 Ala. 639 ; Johnson v. Lightsey, 34 Ala. 169.

We do not deem it necessary to pass upon any of the other questions presented by the bill of exceptions.

Judgment reversed, and cause remanded.