# Howison v. Oakley, et al.

*Action by Heirs of Decedent to recover Damages resulting from the Failure of Purchaser to comply with the Terms of·Sale.*

1. *Sale of decedent's lands; sales by personal representative under decree of probate court judicial.*—Under the statutes authorizing the sales of lands of a decedent by the executor or administrator of his estate, under a decree of the probate court, (Code of 1896, §§173-176), such sales are essentially and strictly judicial sales, in which the court is the real vendor and the executor or administrator is the mere agent of the court, through whom the negotiations are conducted.
2. *Same; duty of probate court when sale is vacated.*—If, for any of the causes enumerated in the statute, a sale of the lands of a decedent, ordered by decree of the probate court, is subsequently vacated, it is the duty of the court, under the statute,

[Howison v. Oakley, *et al.*]

(Code of 1896, § 176), to order a re-sale of the lands, which must be advertised and conducted, in all respects, as the first sale, but need not necessarily, be on the same terms.

3. *Same; measure of damages for failure to comply with the terms of sale.*—When the successful bidder at the sale of a decedent's lands under the probate decree fails to complete the purchase by complying with the terms thereof, the land may be re-sold at his risk; and if a less price be brought at the second sale, the first purchaser becomes liable to the person injured by his default, for the difference between the amount paid at the first sale, and the price brought at the second, together with the expenses of the second sale.

4. *Same; implied condition in contract of purchase.*—In every judicial sale, there is a condition implied by law, which does not depend on any expression of the condition in the order of sale, or in the terms announced at the time of the sale, that if the purchaser fails to comply with the terms of the purchase, if accepted by the court, the land may be re-sold at his risk, and he will pay the deficiency arising on the second sale, together with the expenses thereof.

5. *Same; upon a re-sale the difference in the amount of the sales, together with the cost is stipulated damages.*—Where the purchaser, at the sale of a decedent's lands under an order of the probate court, fails to complete the purchase by complying with the terms thereof, and there is a re-sale, the difference between the amount paid at the first sale and the price brought at the second, together with the costs of the second sale, is in the nature of damages stipulated by the parties, and recoverable as such; and if, for any cause, such stipulated damages, which are the measure of recovery for failure to complete the sale, are not recoverable, there can be no recovery at all, not even of nominal damages.

6. *Same; when there is no re-sale; measure of damages.*—In such case, if, after the failure of the purchaser to complete his sale by complying with its terms, there is no re-sale of the property, the implied agreement as to the measure of damages is no longer binding on the parties; and in that event there can be a recovery of the actual damages sustained, the measure of which damages is the difference between the amount bid and agreed to be paid and the market value of the land at the time of the breach, sold on the same terms.

7. *Same; recovery of liquidated damages; sufficiency of complaint.*—The liquidated damages recoverable from a purchaser at a sale of decedent's lands under an order of the probate court, who fails to complete said sale by complying with the terms thereof, being composed of two separate and distinct

[Howison v. Oakley, *et al.*]

items, (1) the difference between the amount paid at the first sale and that brought at the second, and (2), the necessary expenses incurred by reason of the second sale, in an action against such purchaser for the breach of his contract, a complaint claiming both items as damages is not demurrable because it fails to show that the plaintiff is entitled to recover only one of the items, if it contains sufficient allegations to justify a recovery of the other.

8. *Same; to fix liability, the re-sale must be upon the same terms and without unreasonable delay.*—In order that a purchaser of a decedent's lands at a sale under a decree of the probate court shall be held liable for loss occasioned by a re-sale, made necessary by his default in complying with the terms of the first sale, the second sale must be upon the same or equally beneficial terms as the first, and after no unreasonable delay, or at least there must be no injury caused thereby to the first purchaser; and if this condition as to the second sale is not observed, the liability of the first purchaser is confined to the necessary expenses incurred by reason of the second sale. And this rule is not affected or changed by the fact that the defaulting purchaser also becomes the purchaser at the second sale.

9. *Same; security for purchase money provided by statute; neither court nor personal representative has power to demand different security.*—When the lands of a decedent are sold on credit by a decree of the probate court, the manner in which the payment of the purchase money must be secured is not left to the court nor to the executor or administrator to determine, but is prescribed by statute, which provides that "the executor or administrator must secure the purchase money by taking the notes or bonds of the purchaser with at least two sufficient sureties," (Code of 1896, §171), and neither the court nor the executor or administrator has power to authorize or demand security of a different character; and upon the tender by the purchaser of his notes or bonds with two sufficient sureties, he is entitled to demand that the sale be confirmed.

10. *Same; same; when security insufficient, purchaser should be notified thereof, before sale vacated.*—Where the lands of a decedent are sold on credit by decree of the probate court, the purchaser at said sale is not in default, so as to become responsible for a loss occasioned by a re-sale merely because, when the sale is reported to the court, it ascertains from the evidence presented that the sureties on the notes are insufficient; but the condition precedent to the first purchaser's liability for failure to complete the purchase is that he should

[Howison v. Oakley, *et al.*]

be notified of such finding by the court, and be given an opportunity to furnish sureties satisfactory to the court, and without a compliance with this condition, the court is not justified, under the statute, (Code of 1896, § 175), in vacating the first sale and ordering a re-sale at the risk of the first purchaser.

11. *Same; same; same; sufficiency of demurrer.*—In an action against a purchaser at the sale of lands of a decedent on credit, under a decree of the probate court, for failure to complete the purchase, a complaint for the recovery of the loss occasioned by a second sale, which fails to aver that the defendant was given notice that his sureties were found by the court to be insufficient, and that he had notice of such insufficiency and an opportunity to furnish satisfactory sureties, or which fails to aver facts from which the fact of such notice and opportunity follows as a necessary inference, is insufficient and bad on demurrer, when it appears from the other averments therein that the sale was on credit.

12. *Same; in action for failure to complete purchase, complaint should aver acceptance and approval by the court.*—Since the administrator's sale of lands of a decedent under an order of the probate court is judicial in its nature and subject to confirmation by the court, a complaint in an action for the recovery of loss sustained by failure of the purchaser to complete the purchase by complying with the terms thereof, which does not aver that the bid of the defendant was accepted and approved by the court, or that there was any re-sale of the land, and there are averred in said complaint no facts from which the fact of such acceptance and approval is a necessary inference, is insufficient and bad on demurrer.

13. *Same; action for failure to complete purchase; sufficient averment in complaint.*—In an action for the recovery of loss sustained by the re-sale of land of a deceased, which was purchased by the defendant at a sale on credit under a decree of the probate court, which re-sale was occasioned by the failure of the purchaser to complete the purchase by complying with the terms of the sale, the averment of the complaint that the probate court ordered a re-sale "on account of his (defendant's) failure to give notice with approved security," and that the lands were, therefore, sold in obedience to said order, is not demurrable, since said averment is sufficient to show that the defendant's bid was accepted by the court, and the re-sale was ordered solely because of his failure to furnish the required security.

14. *Same; same; same.*—In such a complaint, it is not necessary to aver that there was a re-sale; for if there was no re-sale of

[Howison v. Oakley, *et al.*]

the lands, the plaintiff would be entitled to recover actual damages sustained, the measure of which damages would be the difference between the amount bid for the land, as accepted by the court, and its market value at the time of the breach, on the same terms.

15. *Same; same; fact of re-sale not being on the same terms or causing the injury to the defendant, no ground for demurrer, but must be pleaded.*—In an action for damages caused by the failure of a purchaser of decedent's lands, at a sale under an order of the probate court, to complete the purchase by complying with the terms of the sale, where it does not affirmatively appear from the complaint that a re-sale of the property was on the same or equally as beneficial terms as the first, or was not had until after an unreasonable delay, causing injury to the defendant, injury caused by the change of terms or unreasonable delay is a matter of defense, and should be set up by special plea.

16. *Same; same; when averment of complaint shows the defendant estopped to set up unreasonable delay.*—In an action for damages caused by the failure of the purchaser of lands of a decedent, sold under a decree of the probate court, to complete the purchase by complying with the terms thereof, the averment in the complaint that the said lands were not re-sold until nearly three years after the first sale by and with the consent of the defendant, is sufficient to show that the defendant consented to the delay, and that he thereby estopped himself from setting up the delay as a defense.

17.—*Same; same; pleading and proof.*—When a complaint shows that one of two or more elements of damages claimed is not recoverable, or fails to aver facts to show that such element is recoverable, such defect should be taken advantage of by motion to strike, or by objection to the evidence by which it is sought to prove such damages, or by requests for appropriate instructions to the jury and not by demurrer.

18. *Same; same; fraud in sale is matter of defense to be set up by plea.*—In an action to recover the loss occasioned by re-sale of lands of a decedent's estate, which was caused by the failure of the purchaser to complete the purchase by complying with the terms of the first sale, it is not necessary to allege in the complaint that the first sale was fairly conducted; since fraud, collusion or unfairness of any kind in the conduct of such sale, is a matter of defense to be specially pleaded.

19. *Same; same; action properly brought in the name of the heirs.*—An action for damages for the failure of a purchaser

[Howison v. Oakley, *et al.*]

of a decedent's lands, sold under a decree of the probate court for partition among heirs, to complete the sale, may be properly brought in the name of the heirs; the legal title to the lands being in such heirs and they being entitled to the proceeds of the sale thereof, and likewise to anything recovered for the breach of the contract.

20. *Same; same; sufficient description of parties plaintiff.*—In an action for damages for the failure of a purchaser to complete the purchase of lands sold by an administrator for partition among heirs under an order of the probate court, a complaint alleging that the plaintiffs are "the heirs at law of * * * [said] deceased," is sufficient on demurrer to show that the plaintiffs are the only heirs of said decedent.

21. *Pleading and practice; joinder of counts.*—Counts on a promissory note, the common count and special counts declaring on a contract of purchase and claiming damages for the breach thereof, are all in assumpsit; and, therefore, can all be properly joined in the same complaint.

22. *Same; when demurrer to two or more counts properly overruled.*—When a demurrer is interposed to two or more counts of a complaint jointly, and only one of such counts is subject to the defect urged, the demurrer is properly overruled.

APPEAL from the Circuit Court of Bibb.
Tried before the Hon. JOHN MOORE.

This action was brought by the appellees against the appellant. The complaint as originally filed contained seven counts, which were as follows: "*First.* The plaintiff claims of the defendant the sum of eight thousand, nine hundred and twenty-five ($8,925) dollars, due by promissory note made by him on, to-wit, the 31st day of January, 1887, and payable twelve months after the date of same, with interest thereon.

"*Second.* The plaintiffs further claim of the defendant the sum of eight thousand, nine hundred and twenty-five ($8,925) dollars, due by promissory note made by him on, to-wit, the 31st day of January, 1887, due two years after the date of the making thereof, with the interest thereon.

"*Third.* The plaintiffs further claim of the defendant the sum of seventeen thousand, eight hundred and fifty ($17,850) dollars as damages with the interest thereon, from the 31st day of January, 1887, for the

[Howison v. Oakley, *et al.*]

breach of the following described contract, to-wit: Plaintiffs aver that they are the heirs at law of William Oakley, deceased, who died, intestate, in the year 1883. That said William Oakley was at the time of his death a resident citizen of Bibb county, Alabama, and that during his life he was seized and possessed of a large estate of lands situated in said State and county. That on or about the 10th day of July, 1883, N. P. Oakley and Fielding Oakley were duly appointed administrators of the estate of said William Oakley, deceased, by the probate court of said State and county, and that they immediately qualified as such administrators. That said administrators, on the 1st or 2d day of July, 1884, filed their petitions in said court, praying that the lands belonging to said estate be sold by said court for the purpose of division among the heirs of said estate. That on the hearing of said petition by said court the said lands of said estate were decreed to be sold at public outcry to the highest bidder, in accordance with the prayer of said petitions, for the purpose of division among the heirs of said estate, and that the said lands should be sold on a credit of one and two years, one-half of the purchase price to be paid in one year, and the other half in two years from the date of the sale, and each payment be secured by note with approved security. That due and legal notice of said sale was given as required by law, that in pursuance of said decree and notice, and by the authority of said court in them vested for said purpose, they did expose for sale, as aforesaid, said lands, that at said sale the defendant A. P. Howison, did become the highest bidder for a portion of said lands, to-wit: two thousand and forty (2,040) acres at the price of eight dollars and seventy-five ($8.75) cents per acre, amounting in all to seventeen thousand, eight hundred and fifty ($17,850) dollars. That the terms of said sale were as aforesaid, one-half payable in one year and the other half in two years from the date of the sale, which sums were to be secured by the note of the purchaser with approved security, that the defendant well knew the terms of said sale at the time he bid off said lands. That said defendant did and does now fail and refuse to comply with the terms of his said purchase, that is, to give notes for the purchase price, with approved

security, in accordance with the orders of said court and terms of said sale and as he had promised to do, but has wholly failed so to do, to the damage of the plaintiffs in the sum of seventeen thousand, eight hundred and fifty ($17,850) dollars, with interest thereon from the 31st day of January, 1887, the date of said sale, for which they sue.

"*Fourth.* The plaintiffs claim of the defendant the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, with interest thereon from the 31st day of January, 1887, as damages, by reason of the breach by him of the following contract, to-wit:" ('here follows substantially the same allegations as contained in the third count as to the plaintiffs being the heirs at law of William Oakley, and as to the sale of the land under the probate court proceedings, and of the purchase thereof by A. P. Howison, the defendant.) This count then avers as follows: "That the said defendant did then and does till yet refuse and fail to perform his part of said contract of purchase, in this, that he has always and does now refuse and fail to execute or give the notes, with approved security, for the amount of his bid and according to his promise so to do, and according to the terms of said sale and the orders and decrees of the said court, all of which he well knew at the time he bid off and became the purchaser of said lands as aforesaid. That the said administrators, as required by law, reported back to the court the proceedings of said sale, as aforesaid, and the defendant's failure to give the notes, with approved security, or the purchase price, according to the contract of sale and the previous orders and decrees of the court. That on the hearing of said report by the court it was ordered by the court that said lands be resold, on account of his failure to give notes, with approved security, as ordered by the court, and as he had promised to do, as aforesaid. That said lands were again offered for sale by said administrators, by virtue and under the orders and decrees of the court for the purpose aforesaid, that due and legal notice of said sale was again given as required by law for such purposes. That the defendant had notice of all such orders, decrees and notices, and at the next sale of said lands, as aforesaid, to-wit, On the 4th day of November, 1889,

the said defendant again became the best and last bidder of said lands, and which were knocked off to him as the purchaser at much less price than before, to-wit, at the price of five dollars and thirty-five cents ($5.35) per acre, amounting in all to ten thousand, nine hundred and fourteen ($10,914) dollars, being six thousand, nine hundred and thirty-six dollars ($6,936) less than his bid at the first sale. The defendant, having complied with the terms of the last sale, the same was reported back to the court, as aforesaid, and a deed ordered to be made to the defendant conveying said lands, which was accordingly done, as required by law. That in consequence of defendant's failure to give notes, with approved security, as required by the orders and the decrees of the court, and the terms of the first sale, as aforesaid, expenses and costs incurred necessarily in making the last sale to the amount of five hundred ($500) dollars; wherefore the plaintiffs claim the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, with interest thereon, or damages equivalent thereto, for his failure, as aforesaid, to comply with the terms of the first sale, as aforesaid, for which they bring their suit."

"*Fifth.* The plaintiffs further claim of the defendant the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, due by an account stated by and between plaintiffs and the defendant, on the day, to-wit, the 31st day of January, 1887.

"*Sixth.* The plaintiffs further claim of the defendant the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, due for merchandise, lands and chattels, sold by the plaintiffs to the defendant the day, to-wit, the 31st day of January, 1887.

"*Seventh.* The plaintiffs further claim of the defendant the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, due for money had and received by the defendant to the use of plaintiffs, on, to-wit, the 31st day of January, 1887, which amount, with the interest thereon, is now due and unpaid."

To the different counts of the complaint the defendant interposed many demurrers, as follows: To the first and second counts, he demurred upon the following grounds: 1. That it was not averred in either of said

counts to whom said note declared upon was payable. 2. Because it was not shown by the averments of either of said counts that the complainants are the owners of said notes, or have any interest therein.

To the third count of the complaint, the defendant demurred, separately, upon the following grounds: 1. Said count fails to aver that the plaintiffs are all the heirs at law of William Oakley, deceased. 2d. Said count does not show that any contract had ever been entered into between the said plaintiffs and the defendant. 3. That the said count does not show that there has been a re-sale of the land therein specified. 4. That it is not shown in said count that the sale of the land there referred to was fairly conducted. 5. That said count does not aver that the first sale was confirmed by the probate court as to the defendant and the re-sale ordered. 6. That said count does not aver that the second sale was had upon the same terms as the first sale.

To the fourth count the defendant demurred upon the following, among other, grounds: 1. That said count is framed for the purpose of recovering the difference between the two sales of land there referred to as on a contract, and does not state or aver that the condition of said first sale was that if the purchaser failed to comply the land was to be resold at his risk. 2. The said count does not aver or show that either of said sales was fairly conducted. 3. That said count does not aver that the first sale was confirmed by the probate court as to the defendant, and a re-sale ordered. 4. That said count does not aver that said second sale was had upon the same terms as the first sale. 14. That the averments of said count fail to show that after the probate court had adjudged the security on defendant's notes, as originally given and reported to the court, to be not approved, that there was any opportunity given to the defendant to give security for the purchase money to the satisfaction of the court. 15. That the averments of said count show that there was an unreasonable delay in making the second sale alleged to have been made by said administrator.

The defendants also demurrred to the complaint as a whole, upon the following grounds: 1. "That there is a misjoinder of counts in said complaint in this, that

the first, second, fifth, sixth, and seventh counts of said complaint are counts *ex contractu,* while the third count is *ex delicto* and sounds in tort." 2. "That there is a misjoinder of counts to said complaint in this that, the first, second, fifth, sixth, and seventh counts of said complaint are counts *ex contractu,* while the fourth count is *ex delicto* and sounds in tort."

Upon the hearing of these demurrers the court sustained the 3d, 5th and 6th grounds of demurrer to the third count, and the 3d, 4th, 14th and 15th grounds to the fourth count of the complaint; and the court also sustained the 1st and 2d grounds of demurrer to the complaint as a whole. The other grounds of demurrer were overruled. The court having sustained the demurrers to the complaint for misjoinder of counts, the plaintiffs amended the complaint by adding the following counts: 8. "The plaintiffs further claim of the defendant the sum of seven thousand, four hundred and thiry-six ($7,436) dollars, with the interest thereon from the 31st day of January, 1887, as damages by reason of the breach by him of the following contract, to-wit: The plaintiffs aver that they are the heirs at law of William Oakley, who died intestate in the year 1883, and who at the time of his death was seized and possessed of a large estate of lands, situated in the county of Bibb, and the State of Alabama, and that said decedent was resident of said State and county at the time of his death. That on the 10th day of July, 1883, N. P. Oakley and Fielding Oakley were duly and legally appointed administrators of said William Oakley's estate, by the probate court of Bibb county, and that they immediately qualified and entered upon their duties as such administrators. That after they had thus duly qualified they filed in the probate court of said county their petitions, praying for a sale of the lands of said estate for the purpose of division among the heirs of said estate. That on the hearing of said petitions by said court the said lands were decreed to be sold for the purpose of division as aforesaid, in accordance with the prayer of the petitions, and ordered and decreed that said lands be sold at public outcry to the highest bidder, on a credit, one-half due one year and the other half two years after the date of the sale, and that said amounts be secured by notes,

with approved security. That due and legal notice of said sale was given as required by law. That on, to-wit, the 31st day of January, 1887, said administrators, under and by virtue of the orders and decrees of said court for said purposes, did offer and expose said lands for sale to the highest, best and last bidder, and that the defendant, A. P. Howison, bid off a portion of said lands, to-wit, two thousand and forty (2,040) acres at the price of eight dollars and seventy-five ($8.75) per acre, amounting in all to seventeen thousand, eight hundred and fifty ($17,850) dollars, and that said lands were knocked off to defendant at said price, he being the highest, best and last bidder, and on terms of sale aforesaid, and defendant well knew the terms of said sale at the time he bid off said lands and had the same knocked off to him as aforesaid. That the said defendant did then and does yet refuse and fail to perform his part of said contract of purchase in this, that he has always and does now refuse and fail to execute or give the notes, with approved security, for the amount of his bid, and according to his promise so to do and according to the terms of said sale, and the orders and decrees of said court, all of which he well knew at the time he bid off and became the purchaser of said lands as aforesaid. That the said administrators, as required by law, reported back to the court the proceedings of said sale as aforesaid and the defendant's failure to give the notes, with approved security, for the purchase price, according to the contract of sale, and the previous orders and decrees of the court. That on the hearing of said report, it was ordered by the court that said lands be resold on account of his failure to give notes, with approved security, as ordered by the court and as he had promised so to do, as aforesaid. That the said lands were again offered for sale by the said administrators, by virtue and under the orders and decrees of the court for the purpose as aforesaid, that due and legal notice of said sale was given as required by law for such purposes, and that the defendant had notice of all such orders, decrees and notices, and at the next sale of said lands as aforesaid, to-wit, on the 4th day of November, 1889, the said defendant was again the best and last bidder for said lands, and which were knocked

[Howison v. Oakley, *et al.*]

off to him as the purchaser, but at a much less price than before, to-wit, at the price of five dollars and thirty-five ($5.35) cents per acre, amounting in all to ten thousand, nine hundred and fourteen ($10,914) dollars, being six thousand nine hundred and thirty-six ($6,936) dollars less than his bid at the first sale. The defendant having complied with the terms of the last sale, the same was reported back to the administrators, as aforesaid, and a deed ordered to be made to the defendant conveying said lands, which was accordingly done, as required by law. And plaintiffs aver that said lands were not resold after the first sale, namely, the sale made on the 31st day of January, 1887, until the 4th day of November 1889, by and with the consent of the defendant. That in consequence of defendant's failure to give notes, with approved security, as required by the order and decree of the court, and the terms of the first sale as aforesaid, expenses and costs were incurred necessarily in making the last sale to the amount of five hundred ($500) dollars; wherefore the plaintiffs claim the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, with the interest thereon, or damages equivalent thereto, for his failure, as aforesaid, to comply with the terms of the said first sale, as aforesaid, for which they bring this suit."

In the 9th count, the averments as to the sale of the land and the purchase thereof by the defendant were the same as those contained in the 8th count, as above set out. The other averments of the 9th count were as follows: "That said administrators, as required by law, reported back to the court the proceedings of said sale, as aforesaid, and that said court accepted said bid and approved said sale in all things, but on account of defendant's failure to give notes, with approved security, for the purchase price, according to the previous order of the court in the premises, the said court ordered that the said lands be re-sold. That the said lands were again offered for sale by the administrators, by virtue and under the orders and decrees of the court for the purposes, as aforesaid; that due and legal notice of said sale was given, as required by law for such purposes, and that the defendant had notice of all such orders, decrees and notices, and at the next sale of said lands, as

aforesaid, to-wit, on November 4th, 1889, the said de-
fendant again became the best and last bidder for said
lands, which were knocked off to him as the purchaser,
but at a much less price than before, to-wit, at the price
of five dollars and thirty-five ($5.35) cents per acre,
amounting in all to ten thousand, nine hundred and four-
teen ($10,914) dollars, being six thousand nine hundred
and thirty-six ($6,936) dollars less than his bid at the
first sale. The defendant having complied with the terms
of the last sale, the same was reported back to the court
by the administrators as aforesaid, and a deed ordered
to be made to the defendant conveying said lands, which
was accordingly done, as required by law. And plain-
tiffs aver that said lands were not resold after the first
sale, namely, the sale made on the 31st day of January,
1887, until the 4th day of November, 1889, and by and
with the consent of said defendant. That in conse-
quence of defendant's failure to give notes, with ap-
proved security, as required by the order and decrees of
the court and the terms of the first sale, as aforesaid,
expenses and costs were incurred necessarily in making
the last sale, to the amount of five hundred ($500) dol-
lars; wherefore plaintiffs claim the sum of seven thou-
sand, four hundred and thirty-six ($7,436) dollars, with
interest thereon, or damages equivalent thereto, for his
failure, as aforesaid, to comply with the terms of the
said first sale, as aforesaid, for which they bring this
suit."

The 10th count in its averments as to the sale of the
land and the orders of the court, and the purchase by
the defendant was the same as the 8th count. After
such averments the 10th count then continued with the
following averments: "That the defendant did then,
and does till yet, fail to perform his part of said con-
tract of purchase, in this, that he has always, and does
now, fail to execute or give notes, with approved securi-
ty, for the amount of his bid, and according to his
promise so to do, and according to the terms of said sale
and orders and decrees of said court, all of which he
well knew at the time he bid off and became the pur-
chaser of said lands, as aforesaid. That the administra-
tors, as required by law, reported back to the court
the proceedings of said sale, as aforesaid, and that said

court accepted said bid and approved said sale in all things, but on account of defendant's failure to give notes, with approved security, for the purchase price, according to the previous order of the court in the premises, the said court ordered that the said lands be resold. That on, to-wit, the ——— day of ———, 1888, the said administrators again offered the said lands for sale at public outcry, under and in pursuance of the orders and decrees of said court, as aforesaid, and that said administrators could not and did not receive any bids for said land at said sale, which the said court would approve, the said bids being less than the real value of said land, and disproportionate thereto. That the said lands were again offered for sale by the said administrators, by virtue and under the orders and decrees of the court for the purposes as aforesaid, that due and legal notice of said sale was given, as required by law for such purposes, and that the defendant, A. P. Howison, had notice of all such orders, decrees and notices, and the next sale of said lands, as aforesaid, to-wit, on November 4th, 1889, the said defendant again became the best and last bidder for said lands, which were knocked off to him as the purchaser, but at a much less price than before, to-wit, at the price of five dollars and thirty-five ($5.35) cents per acre, amounting in all to ten thousand, nine hundred and fourteen ($10,914) dollars, being six thousand nine hundred and thirty-six ($6,936) dollars less than his bid at the first sale. The defendant having complied with the terms of the last sale, the same was reported back to the court, as aforesaid, and a deed ordered to be made to the defendant, conveying said lands, which was accordingly done, as required by law. And plaintiffs aver that said lands were not resold after the first sale on the 31st day of January, 1887, until the ——— day of November, 1889, by and with the consent of the said defendant. That in consequence of defendant's failure to give notes, with approved security, as required by the order of the court and the terms of the first sale, as aforesaid, expenses and costs were incurred necessarily in making the last sale to the amount of five hundred ($500) dollars, wherefore the plaintiffs claim the sum of seven thousand four hundred and thirty-six ($7,436)

dollars, with interest thereon, or damages equivalent thereto, for his failure, as aforesaid, to comply with the terms of said first sale, as aforesaid, on which they bring this suit."

After the same averments as to the order of sale of the probate court of the lands involved in controversy, and the purchase thereof by the defendant, the 11th count then contained the following averments: "That the defendant did then, and does till yet, fail to perform his part of said contract of purchase, in this, that he has always, and does now, fail to execute or give notes, with approved security, for the amount of his bid, and according to his promise so to do, and according to the terms of said sale and orders and decrees of said court, all of which he well knew at the time he bid off and became the purchaser of said lands as aforesaid. That the administrators, as required by law, reported back to the court, the proceedings of said sale, as aforesaid, and that said court accepted said bid and approved said sale in all things, but on account of defendant's failure to give notes, with approved security for the purchase price, according to the previous order of the court in the premises, the said court ordered that the said lands be resold. That on, to-wit, the 8th day of January, 1888, the said administrators again offered the lands for sale at public outcry, under and in pursuance of the orders and decrees of said court, as aforesaid, and that said administrators could not and did not receive any bids for said lands at said sale, which the said court would approve, the said bids being less than the real value of said land, and disproportionate thereto. That the said lands were again offered for sale by the said administrators, by virtue and under the orders and decrees of the court for the purposes as aforesaid, that due and legal notice of said sale was given, as required by law for such purposes, and that the defendant, A. P. Howison, had notice of all such orders and decrees and notices, and the next sale of said lands, as aforesaid, to-wit, on November 4th, 1889, the said defendant again became the best and last bidder for said lands, which were knocked off to him as the purchaser, but at a much less price than before, to-wit, at the price of five dollars and thirty-five ($5.35)

cents per acre, amounting in all to ten thousand, nine hundred and fourteen ($10,914) dollars, being six thousand, nine hundred and thirty-six ($6,936) dollars less than his bid at the first sale. The defendant, having complied with the terms of the last sale, the same was reported back to the court by the administrators, as aforesaid, and a deed ordered to be made to the defendant conveying said lands, which was accordingly done, as required by law, and plaintiffs aver that said lands were not resold after the first sale on the 31st day of January, 1887, until the 4th day of November, 1889, by and with the consent of said defendant. That in consequence of defendant's failure to give notes, with approved security, as required by the order of the court and the terms of the first sale, as aforesaid, expenses and costs were incurred necessarily in making the last sale to the amount of five hundred ($500) dollars; wherefore the plaintiffs claim the sum of seven thousand, four hundred and thirty-six ($7,436) dollars, with interest thereon, or damages equivalent thereto, for his failure, as aforesaid, to comply with the terms of said first sale, as aforesaid, for which they bring this suit."

The 12th count was as follows: "The plaintiffs claim of the defendant the sum of ten thousand ($10,000) dollars damages for the breach of the following contract: That defendant did, on or about the 31st day of January, 1887, contract with the plaintiffs to sell him two thousand and forty (2,040) acres of land, situated in the counties of Bibb and Shelby, Alabama, at the price of eight dollars and seventy-five cents ($8.75) per acre, aggregating in all seventeen thousand, eight hundred and fifty ($17,850) dollars. That the defendant contracted to pay said amount in one and two years, one-half in one year from the date of sale and the other half two years from the date of the sale, and said amounts to be secured by the note of the defendant, with approved security, that the defendant, disregarding his contract with the plaintiffs, as aforesaid, did fail and does until now fail to give his notes with approved security, as he had contracted so to do, but offered plaintiffs his note, with insufficient and worthless security, which the defendant well knew would not be approved,

[Howison v. Oakley, *et al.*]

and which were not approved. That plaintiffs performed their part of the said contract as fully as they could and were willing and ready to convey the title to said lands, whenever the defendant would execute his notes for the purchase money, as aforesaid, but the said defendant failed and does now fail to execute his notes for the purchase money, as aforesaid, to the damage of those plaintiffs in the sum of ten thousand ($10,000) dollars, wherefore they bring this suit."

To the 8, 9, 10 and 11th counts the defendant demurred, separately, upon the following grounds: *"First.* That the averments of said count show that there was an unreasonable delay in making the second in order of time of the two sales, alleged to have been made by said administrators which operated as an abandonment of the first sale, and that the averments of said count that said lands were not sold after the first sale, namely, the sale made on the 31st day of January, 1887, until the 4th day of November, 1889, by and with the consent of the defendant, do not show that the defendant contracted or agreed to remain bound, or that the sale made on the 4th of November, 1889, should be made at his risk, and with a liability on his part to pay the difference between the amounts at which the lands were knocked down and bid off at the two sales.

*"Second.* That the averments of said count show that more than a reasonable time elapsed after the making of the first sale before the second sale was made, whereby defendant was discharged from any liability by reason of his bidding off said lands at the first sale, and that the averment of said count that the said lands were not resold until, the 4th day of November, 1889, by and with the consent of the defendant, does not show anything more than that the defendant acquiesced in the abandonment of the first sale, and wholly fails to show that the defendant agreed or consented to remain bound or liable for the loss or a resale, notwithstanding the delay in making such resale.

*"Third.* That the averments of said count fail to show that the said sale, alleged to have been made on the 4th of November, 1889, was made on the same terms as the sale made on the 31st day of January, 1887.

"*Fourth.* That the averments of said count fail to show that the bid of defendant at the sale made on the 31st day of January, 1887, was accepted by the probate court and the sale ratified and confirmed by said court.

"*Fifth.* That the averments of said count fail to show that the said sale made on the 31st day of January, 1887, was confirmed by the probate court as to the defendant and a resale ordered.

"*Sixth.* That the averments of said count do not show that the plaintiffs are the only heirs at law of said William Oakley.

"*Seventh.* That the averments of said count do not show that any contract was ever entered into between the plaintiffs and the defendant.

"*Eighth.* That the averments of said count show that the right of action, if any there was, for the alleged failure of defendant to give notes, with approved security, for the amount of his bid at the said sale made on the 31st day of January, 1887, was vested in the said administrators of William Oakley, and not in the plaintiffs.

"*Ninth.* That the averments of said count do not show that there was any duty assumed by defendant to plaintiffs by contract or otherwise, or any failure on defendant's part to perform any duty owed to them by defendant.

"*Tenth.* That the averments of said count fail to show that said sale made on the 31st day of January, 1887, was fairly conducted.

"*Eleventh.* That the averments of said count show that the terms of sale under which the sale made on the 31st day of January, 1887, was made, required that each payment be secured by note, with approved security; whereas the terms of sale prescribed by law required the purchaser at such sale should give notes or bonds, with at least two sufficient sureties.

"*Twelfth.* That the averments of said count fail to show that the defendant was ever notified or informed in any way that the probate court of Bibb county determined or adjudged that defendant had failed to give notes, with approved security, or was given his day in court upon the question whether or not it should be so determined as adjudged by said court.

"*Thirteenth.* That the averments of said count fail to show that any rule or notice was served upon defendant to show cause why he should not comply with the alleged terms of said sale, made on the 31st day of January, 1887, or that the defendant was in any other way given his day in court as to the confirmation or vacation of said sale.

"*Fourteenth.* That the averments of said count fail to show that after the probate court of Bibb county had adjudged the security of defendant's notes not approved, that any notice was given to defendant of said adjudication, and that the defendant then failed or refused to give security for the purchase money, approved by the court.

"*Fifteenth.* That the averments of said count fail to show that after the probate court had adjudged the security on defendant's note as originally given and reported to the court to be not approved, that there was any opportunity given the defendant to give security for the purchase money approved by the court.

"*Sixteenth.* That the averments of said count show that the said administrators reported to the probate court that the defendant had not given notes with security approved by them, the said administrators, for the amount of his bid at the sale made on the 31st day of January, 1887, and that thereupon and for this cause the lands were ordered to be resold without any acceptance or ratification of defendant's said bid by the court, and without any notice issued and served upon defendant to show cause why the sale to him should not be set aside because of his alleged failure to give notice, with approved security.

"*Eighteenth.* That the averments of said count fail to show upon what terms of credit or payment the latter in order of time of the two sales of said land were made.

"*Nineteenth.* That the averments of said count fail to show that the alleged consent of the defendant to the delay in the resale of said lands was made upon, or supported by any consideration whatever.

"*Twentieth.* That the averments of said count fail to show that the probate court ordered that the said lands

be resold upon the same terms upon which they had been sold at the first sale thereof.

"*Twenty-first.* That the averments of said count fail to show that the said probate court ordered that the said lands be resold at the risk of defendant."

To the 12th count the defendant demurred upon the following grounds: 1. That said count, in so far as it undertakes to aver performance on the part of plaintiffs, avers a mere conclusion of the pleader; and does not show the facts constituting such alleged performance. 2d. That said count does not allege performance on the part of plaintiffs of the obligation assumed by them under said alleged contract."

To the entire complaint as amended, the defendant demurred upon the following ground: 1. That there is a misjoinder of counts, in that the 12th count sets forth an action *ex contractu,* while the 8th, 9th, 10th and 11th, set forth a cause of action *ex delicto.*

Upon the cause being submitted to the court upon the demurrers filed to the complaint as amended, the court overruled each of the grounds of demurrer; and the defendants declining to plead further, judgment was rendered for the plaintiffs, assessing their damages at an amount agreed upon between the parties in open court. From this judgment the defendant appeals, and assigns as error the overruling of his demurrers to the complaint, as originally filed and as amended, and the separate counts thereof. There was also a cross appeal by the plaintiffs, who assign as error the judgment of the court in sustaining the grounds of demurrer to the complaint as originally filed.

Logan & Vandegraaff, for appellant.—There was a misjoinder of counts in the original complaint. The third count was in case. Sales by administrators are judicial sales requiring report to the court which is the vendor.—*McCully v. Chapman,* 58 Ala. 325; *Cruikshank v. Luttrell,* 67 Ala. 322; *Comer v. Hart,* 79 Ala. 389; *Austin v. Willis,* 90 Ala. 421. It was long ago decided by this court that a count like the third is in case. *Commissioners v. Aiken,* 5 Port. 169. These authorities likewise apply to the fourth count, which does not aver acceptance or ratification of the bid by the probate court. There can not be a contract without the meeting of minds.

2. The demurrers directed to the 3d and 4th counts, as failing to show that the first sale was confirmed as to defendant, or in other words, that defendant's bid was accepted by the court, was properly sustained, upon the authority of the cases above cited, to the effect that the court and not the administrator was the vendor.—*Campe v. Saucier,* 24 Am. St. Rep. 273; *Leslie v. Goodhue,* 69 Hun (N. Y.) 71.

3. The demurrer to the third count, that it does not show a re-sale, was properly sustained under Code, §2122. The probate court is of limited powers. It does not have the power to enforce the performance of the puchaser's bid by attachment like the chancery court. Rorer on Judicial Sales (2d ed.), §161. That it is an implied condition or term of public judicial sale, that bidders who fail to perform shall be liable for loss arising from the re-sale, is held in *Hutton v. Williams,* 35 Ala. 503; *Lamkin v. Crawford,* 8 Ala. 158. It was of course competent for the administrators or the parties in interest to abandon the idea of selling the land at all after defendant had failed to perform. Defendant, being in default, had no standing to insist either upon a re-sale, or upon an acceptance of his bid. If the plaintiffs elected not to proceed with the re-sale, but to retain their lands, it is not conceived that they could complain of defendant's conduct or found an action upon it, any more than they could had the lands, on being re-sold, brought more and not less than at the original sale—over and above the costs of making re-sale, so that the net result was gain and not loss to them. That the gain on re-sale, if any, belongs to the owners and not to the defaulting purchasers, is held in *Commissioners v. Aikin,* 5 Port. 169.

ELLISON, JONES & MAYFIELD, *contra.*

BRICKELL, C. J.—This was an action by the heirs at law of William Oakley, deceased, to recover damages for the failure of appellant to comply with the terms of his purchase of certain lands belonging to the estate of said William Oakley, which were ordered to be sold for division by decree of the probate court, and were offered for sale by the administrator of said estate, and

[Howison v. Oakley, *et al.*]

bid in by appellant. The questions presented by the assignments of error relate solely to the rulings of the trial court on the many demurrers to the various counts of the complaint. There was a cross-appeal by the plaintiffs below, on which the sustaining of some of the grounds of demurrer to the original complaint is assigned as error, and the overruling of the demurrers to the amended complaint is assigned as error by the appellant in the original appeal.

The statutes authorizing the sale of lands of a decedent by the executor or administrator of the estate, under decree of the probate court, require the sale to be reported to the court, and make it subject to confirmation or vacation by the court. Such sales are, therefore, strictly judicial sales, in which the court is the real vendor, and the executor or administrator is a mere agent of the court through whom the negotiations are conducted. Until the sale is confirmed it rests in negotiation only, and the bid of the purchaser is a mere proposition to purchase, which, though accepted by the agent because the highest and best bid, may be rejected by the court if the sale has not been fairly conducted in obedience to its decree, or if the amount bid is greatly less than the real value of the land, or if the required security for the payment of the purchase money is not given.—*Cruikshank v. Luttrell*, 67 Ala. 321; Code of 1896, § § 173, 174. If for any of the above causes the sale is vacated, it is the duty of the court to order a resale, which must be advertised and conducted in all respects as the first sale, but need not necessarily be on the same terms.—Code of 1896, § 176.

When the successful bidder at a judicial sale fails to complete the purchase by complying with the terms thereof, the land may be re-sold at his risk, and if a less price be brought at the second sale, he becomes liable to the persons injured by his default for the difference between the amount bid at the first sale and the price brought at the second, together with the expenses of the second sale. This right to re-sell at the first purchaser's risk is, under the former decisions of this court, a condition of every judicial sale implied by law, and does not depend on any expression of the condition in the order of sale, or in the terms announced at the

time of the sale.—*Lamkin v. Crawford,* 8 Ala. 153;
*Hutton v. Williams,* 35 Ala. 513; *Griel v. Randolph,* 108
Ala. 601. The condition, therefore, becomes a part of
every bid and is incorporated in the contract of every
successful bidder, although it may not have been ex-
pressly agreed to by him, and may not have been an-
nounced at the sale, or known to him. By reason of
this implied condition he agrees that, in the event he
fails to comply with the terms of the purchase, if ac-
cepted by the court, the land may be re-sold at his risk,
and he will pay the deficiency arising on the second
sale, together with the expenses of the same. When
such a condition is inserted in an agreement between
private parties for the sale of property, it is treated as
a stipulation for liquidated damages.—*Adams v. Mc-
Millan,* 7 Port. 73. And in case of judicial sales it is
likewise held by the former decisions of this court that
the difference between the amount bid at the first sale
and the price brought at the second, together with the
costs of the second sale, is in the nature of damages stip-
ulated by the parties and recoverable as such.—*Lamkin
v. Crawford, supra; Hutton v. Williams, supra.* Now,
it is a universal rule that when the parties to a con-
tract, by a stipulation therein, agree upon the amount
to be paid by the one to the other for the breach there-
of, all inquiry as to the extent of the actual injury
suffered is irrelevant, if the amount agreed upon is
held, in law, to be stipulated damages, and not a pen-
alty. The stipulation is in lieu of actual damages and
fixes and controls the amount of the recovery; and, if
for any cause not attributable to the defendant, this
amount cannot be recovered, there can be no recovery
at all, even of nominal damages.—5 Am. & Eng. Encyc.
of Law, (1st ed.), 24; 23 *Ib.* 867; *Kelso v. Reid,* 145 Pa.
St. 606. If, therefore, in the case of a judicial sale, the
loss occasioned by the re-sale is in the nature of stipu-
lated damages, this loss, and this alone, constitutes the
measure of recovery, and if for any reason it be not re-
coverable in a particular case, the plaintiff, when there
has been in fact a re-sale, cannot waive the stipulation,
and, falling back on the ordinary measure of damages
for the breach of a contract for the purchase of real
estate, recover the actual damages sustained; that is,

the difference between the amount agreed to be paid and the market value of the land at the time of the breach. By the stipulation for the liquidated damages he has waived all right to claim actual damages measured by the ordinary legal standard. But if there has been no re-sale of the property—if, for instance, the application for the sale was withdrawn, or, by request of the administrator, no re-sale was ordered—the implied agreement to measure the damages caused by the purchaser's default by the loss occasioned by the re-sale is no longer binding on the parties. The implied agreement is, not that there *shall* be a re-sale, but that there *may* be one, and if there is a re-sale, the loss occasioned thereby shall constitute the measure of the first purchaser's liability. In the event there is no re-sale, there may, therefore, be a recovery of the actual damages sustained by the purchaser's default. The liquidated damages agreed to be paid, namely, the loss occasioned by the second sale, if a less price is brought than at the first, is composed of two items; first, the difference between the amount bid at the first sale and that brought at the second; and, second, the necessary expenses incurred by reason of the second sale; and each of these amounts the first purchaser impliedly agrees to pay. In an action for the breach of his contract, claiming both items as damages, although the circumstances connected with the second sale may preclude a recovery of the first item, yet the expenses of the second sale may be recoverable; and a complaint is not, therefore, demurrable because it fails to show that plaintiff is entitled to recover the one item, if it contains sufficient to justify a recovery of the other.

The implied condition of a judicial sale, that the purchaser shall be responsible for the loss occasioned by a re-sale, made necessary by his default, is itself subject to the condition that the second sale shall be upon the same terms as the first—or at least, upon terms equally beneficial to the first purchaser—and that it shall not be delayed for an unreasonable time, or, if upon different terms or after an unreasonable delay, that injury be not caused thereby to the first purchaser. Such a condition precedent to his liability is manifestly within the contemplation of the parties, and both reason and

justice demand that if, without the consent of the first purchaser, the second sale shall be made upon different and less beneficial terms, or after unreasonable delay, and injury be thereby caused to the first purchaser by reason of the reduced price brought at the second sale, owing to the change of terms or delay, he should be released from all liability for the deficiency arising on the second sale; for there are no means of ascertaining what the land would have brought at the second sale, if it had been held on the same or equally beneficial terms as the first and within a reasonable time thereafter, and therefore no means of determining the amount to be paid under the implied stipulation.—*Hare v. Bedell,* 98 Pa. St. 485; *Shinn v. Roberts,* 20 N. J. L. 435; *Riggs v. Pursell,* 74 N. Y. 370. Under these circumstances the liability of the first purchaser should be confined to the expenses of second sale, which his own default made necessary. The fact that the defaulting purchaser at the first sale was also the purchaser at the second sale, held under different terms and after unreasonable delay, should not make the above rule inapplicable. It cannot be said that his injury as the first purchaser, occasioned by the delay and the change in the terms, whereby a reduced price was brought at the second sale, is offset by his gain as the second purchaser in procuring the land at a reduced price, and that he was not, therefore, injured; for the second sale, if confirmed, must be presumed to have brought a sum not greatly disproportionate to the real value of the land, considering the terms and time of the sale.

When the lands of a decedent are sold on credit by decree of the probate court, the manner in which the payment of the purchase money must be secured is not left to the court, nor to the administrator, but is prescribed by statute, which provides that "the executor or administrator must secure the purchase money by taking the notes or bonds of the purchaser with at least two sufficient sureties."—Code, 1896, § 171. The court has no power to authorize, and the executor or administrator has no power to demand, security of a different character. It is manifest, therefore, that if the administrator should demand of the purchaser any kind of security other than his notes or bonds, with at least two

[Howison v. Oakley, *et al.*]

sufficient sureties, the purchaser would not be in default for failure to give such security, but would be entitled to tender his notes or bonds, with two sufficient sureties, and demand that the sale be confirmed. Nor is the purchaser in default so as to become responsible for a loss occasioned by a re-sale, merely because, when the sale is reported to the court, the court finds from the evidence presented that the sureties on the notes are insufficient. Section 175 provides that when it is made to appear to the court that the sureties on the notes or bonds of the purchaser are insufficient, the sale "must not be confirmed until he gives security for the purchase money to the satisfaction of the court; and if such security is not given, the sale must be vacated as to the purchaser thus failing." The statute thus clearly contemplates that, in the event the sureties on the notes first given are found by the court to be insufficient, the purchaser shall have notice of this finding and be given an opportunity to furnish sureties satisfactory to the court. It is, therefore, a condition precedent to the first purchaser's liability for failure to complete the purchase,—at least, where he has furnished notes or bonds with two sureties,—that he have such notice and opportunity, and without a compliance with this condition, the court is not justified in vacating the first sale and ordering a re-sale at the risk of the first purchaser. A complaint for the recovery of the loss occasioned by the second sale, which fails to aver that the defendant was given notice that his sureties were found by the court to be insufficient, and had an opportunity to furnish satisfactory sureties, or which fails to aver facts from which the fact of such notice and opportunity follows as a necessary inference, is bad on demurrer, if it appears that the sale was on credit, and the averments are susceptible of the construction that the purchaser gave to the administrator his notes or bonds with two sureties, or fail to distinctly show that he failed or refused to give such notes. No default on the part of the purchaser is shown in the absence of such averments.

By the application of the above principles the various grounds of demurrer may be disposed of. The third count of the complaint fails to aver that the bid of defendant was accepted or approved by the court, or that

16

there was any re-sale of the land, and there are no facts averred from which the fact of such acceptance or approval is a necessary inference. As we have already seen, the court was the real vendor, and the administrator was its mere agent to conduct the negotiations, whose acts were subject to confirmation by the court. Until the bid was accepted by the court, the purchase was incomplete, the bid was a mere proposition to purchase, and did not, therefore, amount to a contract on which any liability could be incurred. For aught that appears in this count, the court may have found the amount of defendant's bid to be greatly less than the real value of the land, and may on this account have refused to confirm the same. It is, therefore, essential to the sufficiency of each of the special counts that it be averred in some form that the bid of the defendant was accepted and approved by the court.—*Stout v. Philippi Mfg. Co.*, 41 West Va. 339; *Cruikshank v. Luttrell*, 67 Ala. 321. In the fourth and each of the other special counts, except the third and twelfth, although there is no direct averment of the acceptance and approval of the bid, yet it is alleged that the administrator reported the sale to the court, and that the court ordered a re-sale "on account of his failure to give notes with approved security," and the lands were again sold in obedience to said order. We are of the opinion these allegations are sufficient to show that the bid was accepted, and that the sale was vacated solely on the ground of the failure to furnish the required security. *Griel v. Randolph*, 108 Ala. 601. Although the third count was bad for the reason pointed out, yet the demurrer specifying this objection went to the third and fourth counts jointly, and since the fourth count was not demurrable on this ground, the demurrer was properly overruled. If there was no re-sale of the land, then, as stated above, the actual damages sustained were recoverable, and the true measure of such damages would be the difference between the amount bid for the land, if accepted by the court, and its market value at the time of the breach on the same terms.—*Old Colony Co. v. Evans*, 6 Gray (Mass.) 25; 5 Am. & Eng. Encyc. Law, 28. It was not, therefore, necessary to the statement of a cause of action that a re-sale be averred, and the

demurrer specifying this objection should have been overruled. The fourth ground of demurrer to the third and fourth counts jointly was too general to be consid-. ered and should have been overruled.

In each of the special counts, except the twelfth, it is alleged that the court ordered the first sale to be made "on a credit, one-half due in one year, and the other half two years after the sale, and that said amounts be secured by notes with *approved security*," and the breach assigned is, that defendant "has always and does now refuse and fail to execute or give the notes with approved security;" and it is further averred that the court ordered a re-sale "on account of his failure to give notes with approved security." It is not averred that the defendant failed or refused to give any notes or bonds, or that he failed or refused to give his notes or bonds with two sureties, and that on account of such failure a re-sale was ordered, nor is it averred that defendant, previously to the order for the re-sale, had any notice that the sureties offered by him were found to be insufficient by the court, or any opportunity to furnish satisfactory security, which notice and opportunity, we have seen, the statute contemplates. The character of the security required of defendant by the administrator may have been different from that required by the statute, and if it was, defendant was justified in refusing to give it, and incurred no liability by reason of such refusal. The counts aver, it is true, that "defendant had notice of all such orders, decrees and notices," but the only orders and notices previously mentioned in the counts are the order for the re-sale and notices of such re-sale, whereas the notice to which defendant was entitled was a notice, *previously to the order* for the re-sale, that his sureties were found to be insufficient. Applying the principles above stated to these averments, the counts were defective for the reasons pointed out, and the demurrer to the amended counts presenting these objections should have been sustained.

The special counts fail to show that the second sale was upon the same, or equally beneficial, terms as the first, and show affirmatively that nearly three years elapsed between the first and second sales. As stated

above, if the terms of the second sale were substantially different from those of the first, or if there was unreasonable and unexplained delay in making the second sale, and injury to the first purchaser was caused thereby, he is released from all liability for the deficiency arising on the second sale, although he may still be liable for the expenses of the second sale. But injury caused by the change of terms or unreasonable delay is a matter of defense, and, unless it affirmatively appears from the complaint, should be set up by special plea. It was not necessary to aver that the terms of the second sale were the same as those of the first, and it does not affirmatively appear that defendant was injured by the long delay in making the second sale. The reduced price brought at the second sale may have been caused by the change in the terms, if any, or by the general depreciation in the value of lands located where these were. Each of these counts avers, in explanation of the delay, that "said lands were not re-sold after the first sale, namely, the sale made on the 31st day of January, 1887, until the 4th day of November, 1889, by and with the consent of the defendant." This averment, we think, sufficiently shows that defendant consented to the delay, and thereby estopped himself from setting up the delay as a defense. The demurrers presenting these objections should have been overruled. Moreover, the objections go only to one element of the damages claimed, namely, the difference between the amount bid at the first sale and the price brought at the second, while, as we have seen, the expenses of the second sale may be recoverable, although the difference between the two sales may not be. When the complaint shows that one of two or more elements of damages claimed is not recoverable, or fails to aver facts sufficient to show that such element is recoverable, the defect should be taken advantage of by a motion to strike, or by objection to the evidence by which it is sought to prove such damages, or by a request for appropriate instructions to the jury, and not by demurrer.

It was not necessary to allege in the complaint that the first sale was fairly conducted. If there was any fraud, collusion or unfairness of any kind in the conduct of the sale, this was a matter of defense. Nor was.

it necessary to aver that the order for the re-sale provided that such re-sale should be at the risk of the defendant. This, as we have stated, is a condition of every judicial sale arising by implication of law, and is not dependent upon any expression thereof in the order for the first sale or that for the re-sale, or any announcement thereof at the sale.

The trial court erred in sustaining the demurrer for misjoinder of counts. The counts on the promissory notes, the common counts, and the special counts declaring on the contract and claiming damages for the breach thereof, were all in assumpsit, and were, therefore, properly joined. The action was properly brought in the name of the heirs of William Oakley, deceased, although it might also have been brought in the name of the administrators. The legal title to the lands was in the heirs; they were entitled to the proceeds of the sale thereof, the sale having been for division, and they will be entitled to anything that may be recovered for the breach of the contract, whether in their names or in the name of the administrator. They were, therefore, the persons injured by the defendant's default and are entitled to sue for the injury.—*Hutton v. Williams*, 35 Ala. 512; *Griel v. Randolph*, 108 Ala. 601. The averment that plaintiffs are "the heirs at law of William Oakley, deceased," is sufficient, on demurrer, to show that they are the only heirs of said decedent. The demurrers to the 12th count, which declares on a contract made directly with plaintiffs for the purchase of lands, were properly overruled.

It results from what has been said that on the cross-appeal all the assignments of error are well taken, except that relating to the sustaining of the fourteenth ground of demurrer to the fourth count of the original complaint, which specified the failure of the count to aver that defendant had any opportunity, previously to the order for the re-sale, to furnish security satisfactory to the court. Of the assignments of error on the original appeal those only are well taken which relate to the overruling of the 11th, 12th, 13th, 14th and 15th grounds of demurrer to the 8th, 9th, 10th and 11th counts of the amended complaint.